# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DANE HARRINGTON YOUNG, ) | |
|           Petitioner, ) | |
| ) | |
|     v. ) | Civil Action No. 05-10050-DPW |
| ) | |
| UNITED STATES OF AMERICA, ) | |
|           Respondent. ) | |

## GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION AND REQUEST FOR SUMMARY DISMISSAL

The United States of America, by and through the undersigned Assistant U.S. Attorney, hereby files its Response to the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (the "§ 2255 Motion") filed by Petitioner Dane Harrington Young ("Young"). For all of the reasons set forth below, Young's § 2255 Motion is wholly without merit and should be summarily dismissed.

## I.   BACKGROUND

### A.   Criminal Action Against Young (03-cr-10103-DPW)

On April 9, 2003, a federal grand jury returned a one-count indictment against Young, charging him with unlawful importation of 500 grams or more of cocaine in violation of 21 U.S.C. §§ 952(a) and 960(a). See Indictment (Apr. 9, 2003), Crim Action No. 03-cr-10103-DPW. The indictment, which also included a criminal forfeiture allegation, stemmed from the following material facts:[1]

---

[1] These facts are taken from the factual findings in Young's Presentence Report ("PSR") dated December 29, 2003, which this Honorable Court adopted in the Statement of Reasons entered in support of the Judgment dated February 6, 2004. See Exhibit 1 (Judgment & Stmt of Reasons) (adopting factual findings in PSR).

### 1.     Admissions to Customs Inspectors & Arrest at Logan

On March 18, 2003, Young arrived at Logan International Airport at approximately 12:05 a.m. on Air Jamaica Flight 49 from Montego Bay, Jamaica.  Before Young proceeded to the Immigration desk, a U.S. Customs Inspector questioned him about the purpose of his trip.  Prior to Young's arrival at Logan, Customs officials had reviewed Young's itinerary and immigration status, which indicated that (i) Young had flown to Jamaica from Boston only four (4) days earlier (*i.e.*, on March 14, 2003) and (ii) Young was a permanent legal residence of the United States residing in Florida.  In response to the inspector's questions, Young stated that he was a student in Florida and that he had flown to Massachusetts to visit some friends.  Young then proceeded through Immigration, gathered his luggage, and prepared to depart the Customs area.

At approximately 12:30 a.m., before departing the Customs area, a second Customs Inspector stopped Young for inspection.  Young produced documents to the inspector and answered additional questions about his trip to Jamaica.  During this interview, Young stated that he was an electrical engineering student at Florida State University, and that he had traveled from Jamaica to Boston to visit two "good friends" from Springfield, Massachusetts.  Young identified his friends as "Steven" and "Orette," a/k/a "Biggs."  In response to questions about his studies, Young stated that he was taking the semester off and did not know when he would return to school.  When asked how an "impecunious" student could afford a $968 round-trip ticket to Jamaica, Young replied that "Steven" and "Biggs" paid for it.  When asked for the last names of these "good friends," however, Young stated that he did not know their last names.

Unsatisfied with Young's responses, Customs Inspectors took Young to a private interview room for further questioning.  Although the inspectors expressed skepticism, Young insisted that his responses were true and accurate.  At the same time, however, Young admitted that his story did

not make sense.  A short while later, at approximately 2:05 a.m., Young admitted that he had transported a large amount of cash to Jamaica for "Steven" and "Biggs."  Three (3) minutes later, Young retracted this statement, and admitted that he had swallowed approximately 50 pellets of an unknown substance prior to boarding the return flight to Logan.

Upon making this admission, Young signed an x-ray consent form and was placed under arrest for unlawfully importing a controlled substance into the United States.  After signing a Miranda rights form, Young exclaimed, "now I threw my life away; now I know what's going on." Shortly thereafter (at approximately 2:54 a.m.), Young was taken to the Whitten Hospital in Everett, Massachusetts, where an x-ray confirmed that Young had swallowed a large number of cylindrical objects.  Inspectors called a Special Agent from the U.S. Bureau of Customs and Immigration Enforcement ("ICE") to join them at the Whitten Hospital to investigate the matter.  By the time the Special Agent arrived at the hospital, Young had already passed several pellets with the aid of special medication to facilitate the process.  A field-test of a sample pellet confirmed the presence of cocaine.

## 2.    Further Admissions to ICE Special Agent

At the hospital, Young made further statements and admissions to the ICE Special Agent, who asked Young further questions about his smuggling activity.  In sum, Young made the following statements to the Special Agent:

- Young had visited Jamaica approximately two (2) months ago to attend a funeral.

- While in Jamaica, Young met an individual named "Indian," who asked Young if he wanted to "make some money."

- Upon returning to the United States, Young had several conversations with "Indian," who arranged for Young to contact a Massachusetts resident named "Tatte."

- Young and "Tatte" then conversed by telephone on numerous occasions, after which "Tatte" reserved airline tickets for Young to travel from Florida to Hartford, Connecticut, on March 13, 2003. After flying to Hartford, Young traveled by taxi to 837 State Street, Apartment 303, Springfield, Massachusetts, to meet "Tatte" and his associates. Young slept at "Tatte's" apartment that night, until "Tatte" awoke him at 4:00 a.m. on March 14, 2003, and gave him a round-trip ticket to Jamaica, along with $250 cash. Young took a taxi to Logan, where he boarded an Air Jamaica flight, which departed for Montego Bay at approximately 7:15 a.m. that morning.

Later, after making the foregoing statements to the Special Agent, Young admitted that he had not been completely truthful with the Special Agent. Young then made the following further admissions:

- Young admitted that the purpose of his previous trip to Jamaica (approximately two months earlier) was not to attend a funeral, but rather to smuggle drugs back to the United States.

- A woman named "Simone" had recruited Young to smuggle drugs back to the United States on that earlier trip, but no smuggling took place because negotiations between "Simone" and "Indian" did not go well.

- With respect to the instant trip, Young admitted that he believed that the cylindrical objects that he swallowed contained cocaine.

- Young also admitted that "Tatte" and "Indian" set up the instant trip, and that Young was supposed to deliver the cocaine that he had swallowed to "Tatte" in Springfield, Massachusetts.

After Young had passed all the pellets at the Whitten Hospital, agents sent the pellets to a laboratory for testing. According to the U.S. Drug Enforcement Administration ("DEA") lab report, the pellets that Young had imported from Jamaica had a total net weight of 566.8 grams of cocaine.

### 3.    District Court Proceedings

On March 19, 2003, a criminal complaint issued against Young. The next day, U.S. Magistrate Judge Charles B. Swartwood III appointed Federal Public Defender Tim Watkins as counsel to represent Young. See Exhibit 2 (Docket Sheet) at 2. After an Initial Appearance and Detention Hearing (on March 21, 2003 and March 25, 2003, respectively), a grand jury indicted

4

Young for conspiracy to import cocaine into the United States from Jamaica in violation of 21 U.S.C. §§ 952(a) and 960(a).

On April 25, 2003, Young appeared for an Arraignment and entered a plea of "not guilty." See id. at 4. Four days later, this Honorable Court held a hearing on Young's motion for review of Magistrate Judge Swartwood's Detention Order. Id. The Court ultimately granted Young's motion, and released him on conditions, including supervision by Pretrial Services in Florida, where Young resided. See id. at 5.

By June 2003, the parties were involved in plea negotiations. See Initial Status Report (June 13, 2003), Crim. No. 03-cr-10103-DPW, at 1. In September 2003, Young's counsel filed a motion for the preparation of a Pre-Plea PSR. The Court granted that request and scheduled a Rule 11 Hearing and Sentencing Hearing for January 5, 2004, which was subsequently continued to January 12, 2005. See Exhibit 2 (Docket Sheet) at 6-7. Both parties filed sentencing memoranda before Young entered a guilty plea on January 12, 2004. See Exhibit 3 (Tr. of Jan. 12, 2004 Hr'g). Defense counsel also filed a Motion for Downward Departure and sought various sentencing adjustments and recommendations on behalf of Young. See Exhibits 3-4 (Tr. of Hrg's held Jan. 12, 2004 and Feb. 6, 2004). On February 6, 2004, this Honorable Court sentenced Young to 30 months imprisonment (with a recommendation for designation to the McRae facility in Georgia) and three (3) years of supervised release. See Exhibit 1 (Judgment & Stmt of Reasons).

**B.    Young's § 2255 Motion**

Young's § 2255 Motion raises two (2) claims for post-conviction relief.

1.    Young's First Claim of Ineffective Assistance of Counsel

First, Young argues that he was denied his constitutional right to effective assistance of counsel because his lawyer failed to seek a judicial recommendation for early disposition programs.

See § 2255 Motion at 2-4.   According to Young, his counsel's representation was deficient under Strickland v. Washington,  466 U.S. 668 (1984), because defense counsel neither advised Young about early disposition programs nor sought a judicial recommendation for such programs either orally or in writing. See § 2255 Motion at 2.  Young argues that he was prejudiced by this failure because "he would not have pleaded guilty or cooperated with authorities without a recommendation for the early disposition program or fast track programs if he had known of such programs to begin[] with."  Id. at 3.   Young further argues that "[t]he sentencing proceeding may well have ha[d] a different result if the request for a judicial recommendation for the fast track programs were made, for the request may have been granted."  Id. at 4.  Young concludes that this failure "prejudiced [his] chances of fair judicial process ... to such extent that [he] was denied [his] Six[th] Amendment [r]ight to assistance of counsel."  Id.

Although the foregoing argument based on early disposition programs clearly forms the main thrust of Young's first claim for relief, this argument (which appears at Pages 1 - 4 of Young's supporting memorandum) is interspersed with various additional bald assertions concerning defense counsel's performance.  Specifically, according to Young, his lawyer failed to:  (i) "investigate or prepare a defense," (ii) "make timely and necessary objections," (iii) "conduct any meaningful adversarial challenge," (iv) "argue for a better plea agreement," (v) "inform petitioner of all available defenses," and (vi) "negotiate any and all available departures from the sentence petitioner was facing."  See § 2255 Motion at 3.  For all of the reasons set forth below, none of these bald assertions entitles Young to post-conviction relief.

2.    Young's Second Claim of Ineffective Assistance of Counsel.

Young's second claim for relief is based on Section 3E1.1 of the United States Sentencing Guidelines, which provides sentencing adjustments to defendants who accept responsibility for their

criminal offenses.  Young summarizes this claim as follows:

> Shortly after [petitioner] was arrested he gave a complete statement admitting the element of the offence. [Petitioner] accepted responsibility and received a two (2) point reduction, under U.S.S.G. 3E1.1(b).  Counsel's failure to raise the issue and omi[ss]ion constituted ineffective assistance of counsel and prejudiced the [] [petitioner]."

See § 2255 Motion at 4.  According to Young, his lawyer "should have requested a complete three point reduction since the defendant had accepted responsibility for the offense ... in a complete and timely manner."  Id. at 5.  For the reasons set forth below, Young's § 2255 Motion should be summarily dismissed.

## II.    § 2255 STANDARD OF REVIEW

In pertinent part, 28 U.S.C. § 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  In other words, Section 2255 "provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack."  David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (citing Hill v. United States, 368 U.S. 424, 426-27 (1962)).

The petitioner bears the burden of establishing the need for relief under § 2255.  David, 134 F.3d at 474.  Specifically, a petitioner must establish that his conviction was imposed in violation of the Constitution or laws of the United States involving a "fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inadvertent with the rudimentary

demands of fair procedure." <u>Hill</u>, 368 U.S. at 428; <u>United States v. Addonozio</u>, 442 U.S. 178, 185

(1979). To obtain relief under § 2255, a petitioner "must clear a significantly higher hurdle than

would exist on direct appeal." <u>United States v. Frady</u>, 456 U.S. 152, 166 (1982).

## II. ARGUMENT

### A. Neither of Young's Ineffectiveness Claims Meets the *Strickland* Standard

#### 1. Young Carries Heavy Burden of Proof under *Strickland*

The Sixth Amendment states that "in all criminal prosecutions, the accused shall enjoy

the right . . . to have assistance of counsel for his defense." U.S. Const. Amend. VI. "It has long

been recognized that the right to counsel is the right to <u>effective</u> assistance of counsel."

<u>McMann v. Richardson</u>, 397 U.S. 759, 771, n. 14 (1970) (emphasis added). The U.S. Supreme

Court, however, has held that "judicial scrutiny of counsel's performance must be highly

deferential." <u>Strickland v. Washington</u>, 466 U.S. 668, 689 (1984). Courts must "indulge a

strong presumption that counsel's conduct falls within a wide range of reasonable professional

assistance." <u>Id</u>. at 689.

The standard employed for determining the merits of ineffective assistance claims is

whether the assistance of defense counsel was reasonably competent, *i.e.*, whether the quality of

defense counsel's representation was within the range of competence expected of attorneys in

criminal cases. <u>United States v. Bosch</u>, 584 F.2d 1113, 1121 (1st Cir. 1978). Effective

representation does not mean errorless representation and "a choice between trial tactics, which

appears unwise only in hindsight, does not constitute constitutionally-deficient representation

under the reasonably competent assistance standard." <u>Bosch</u>, 584 F.2d at 1121. <u>See also</u> <u>United</u>

<u>States v. Thomann</u>, 609 F.2d 560, 566 (1st Cir. 1979); <u>United States v. Garcia</u>, 698 F.2d 31, 35

(1st Cir. 1983). Moreover, even deficient representation is legally insignificant unless

accompanied by actual prejudice.  United States v. McGill, 11 F.3d 223, 226 (1st Cir. 1993)

("petitioner must establish both constitutionally deficient performance on his attorney's part and

concomitant prejudice"").

In Strickland, the Supreme Court set forth a two-prong test for a claim of ineffective

assistance of counsel:

> First, the defendant must show that counsel's performance was deficient.  This
> requires showing that counsel made errors so serious that counsel was not
> functioning as the counsel guaranteed by the 6th Amendment.  Second, the
> defendant must show that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable.

A § 2255 petitioner must make these showings by a preponderance of the evidence.  Lema v.

United States, 987 F.2d 48, 51 (1st Cir. 1993); Barrett v. United States, 965 F.2d 1184, 1186 (1st

Cir. 1992).

## 2.    Young's First Claim of Ineffective Assistance of Counsel Should be Summarily Dismissed

### a.    Defense Counsel's Failure to Advise Young of "Early Disposition Programs" Did Not Constitute Ineffective Assistance of Counsel

Young's claim of ineffectiveness based on his lawyer's failure to advise him of early

disposition programs and/or seek a judicial recommendation for such programs is wholly without

merit.  As noted in a recent decision by the United States District Court for the Eastern District

of Louisiana, which addressed a similar claim by a § 2255 petitioner:

> Early disposition programs were statutorily authorized by Congress through
> direct amendment to the USSG by the Prosecutorial Remedies and Other Tools
> to end the Exploitation of Children Today Act, Pub.L. 108-21 ("PROTECT
> Act") of 2003.  In order to effectuate the directive contained in § 401(m)(2)(B)
> of the PROTECT Act, the United States Sentencing Commission promulgated
> § 5K3.1....

United States v. Almonte-Gomez, 2005 WL 767885 (E.D.La. Mar. 24, 2005).   Section 5K3.1

9

provides as follows:

> Upon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the District in which the court resides.

U.S.S.G. § 5K3.1 (effective Oct. 27, 2003).  In a memorandum issued to all United States Attorneys in September 2003, the Attorney General outlined implementation principles for these "fast track" departures.  Almonte-Gomez, 2005 WL 767885 at *2.  According to these principles, after obtaining the necessary approval, a United States Attorney may establish an early disposition program whereby the government may agree to file a Motion for Downward Departure in exchange for a Plea Agreement that meets certain criteria.  Id.

Young's first claim for relief fails, however, because no "fast track" and/or "early disposition" program exists in the District of Massachusetts.  Young has not, and cannot, prove otherwise.  In light of the absence of any such program, the failure of Young's counsel to advise him about such programs and/or to seek a judicial recommendation for such programs simply cannot provide any basis for post-conviction relief.  As stated by the court in Almonte-Gomez, where "no early disposition program was available, petitioner cannot satisfy the first prong of Strickland analysis – deficient performance by trial counsel."  Id.

        b.     Young's Bald Assertions of Ineffectiveness are Similarly Without Merit

As noted above, although Young's first claim for relief focuses "early disposition programs," Young also sets forth numerous bald assertions of alleged deficient performance.  Specifically, Young asserts that his lawyer failed to:  (i) "investigate or prepare a defense," (ii) "make timely and necessary objections," (iii) "conduct any meaningful adversarial challenge," (iv) "argue for a better plea agreement," (v) "inform petitioner of all available defenses," and (vi)

"negotiate any and all available departures from the sentence petitioner was facing." See § 2255 Motion at 3. These assertions do not entitle Young to post-conviction relief for several reasons.

First, Young's unadorned assertions of deficient performance simply do not meet the first prong of the Strickland standard. To satisfy this prong, a § 2255 petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. As stated by the First Circuit, "[t]his aspect of the test presents a formidable hurdle, as the court begins with the presumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" Hoyos-Medina v. United States, 989 F.2d 484, 1993 WL 72420, **2 (1st Cir. (Puerto Rico)) (quoting Strickland, 466 U.S. at 669).

Bald assertions that an attorney "failed to investigate or prepare a defense" and "failed to make timely and necessary objections," such as those alleged here (§ 2255 Motion at 3), simply do not clear this "formidable hurdle." Young has not specified what "defenses," "objections," or "adversarial challenges" form the basis of his claim. Nor has he explained how these alleged failures constitute representation "below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Instead, Young simply sets forth unsupported, conclusory assertions that his counsel failed to provide a sufficient defense. Such bald assertions do not satisfy the "deficient performance" prong under Strickland. See United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993) (noting court reviewing § 2255 petition "need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets"); Hoyos-Medina, 1993 WL 72420 at **3 (noting "bald assertion cannot support a reversal for ineffective assistance of counsel").

Second, Young has not shown prejudice with respect to any of these alleged failures. Under the second prong of the Strickland test, Young must affirmatively prove prejudice, i.e.,

11

that his attorney's errors "actually had an adverse effect on the defense" and not merely that they "had some conceivable effect on the outcome of the proceeding."  Strickland, 466 U.S. at 693. Rather than satisfy this burden with respect to each of these alleged errors, Young simply states, in a conclusory fashion,  that "counsel prejudiced [his] chances of a fair judicial process due to counsel's performance being below prevailing professional norms" and that "[if] counsel's performance was in the professional norm, the outcome of the case would have been much different, and petitioner never would have plead[ed] guilty." § 2255 Motion at 4.  Such an all-encompassing, conclusory statement falls far short of establishing an actual adverse effect as to each alleged error, as required by Strickland.  See Ortiz-Casanova v. United States, 54 F.3d 764, 1995 WL 301734 (1st Cir. (Puerto Rico)) (holding "bare and conclusory statement that if [§ 2255 petitioner] had known that his offense was nonparolable, he would not have pleaded guilty and would have gone to trial is insufficient to show prejudice") (emphasis added).

Third, the "failures" alleged in Young's memorandum are factually inaccurate.  The district court record clearly shows that Young's attorney did, in fact, "prepare a defense" for Young, including numerous timely objections and effective "adversarial challenges." Specifically, even a cursory review of the record shows the following examples of defensive actions and objections made on behalf of Young:

> (1)   Counsel cross-examined the government's witness and moved for Young's release at the Detention Hearing held March 25, 2003.  See Exhibit 2 (Docket Sheet) at 3.
>
> (2)   Counsel challenged U.S. Magistrate Judge Swartwood's Order of Detention, appealing the issue to this Honorable Court.  See id.
>
> (3)   Counsel moved to temporarily suspend Young's electronic monitoring.
>
> (4)   Counsel requested the preparation of a Pre-Plea PSR on behalf of Young (which the Court granted on October 8, 2003).  See id. at 6.

(5)    Counsel filed numerous objections to the draft Pre-Plea PSR, including challenges to the guideline application therein.

(6)    Counsel filed a Sentencing Memorandum and Motion for Downward Departure on behalf of Young, in which counsel argued that the Court should:  (a) reduce Young's offense level by 3-4 levels to account for his minor role in the offense, and (b) downwardly depart to an 18-month sentence on grounds of (i) aberrant behavior, (ii) Young's family circumstances, (iii) Bureau of Prison policies that treat Young, an alien, unfairly, and (iv) the combination of these factors.  See id. at 7.

(7)    Counsel submitted a letter to support the defendant's position that he was truthful at his safety-valve proffer and therefore entitled to a sentencing adjustment under U.S.S.G. § 5C1.2.  See Exhibit 3 (Tr. of Jan. 12, 2004 Hr'g) at 22.

(8)    Counsel argued for an additional two-level reduction in the offense level under the safety-valve provision, U.S.S.G. § 5C1.2.  See id. at 16-29.

(9)    At the sentencing hearing, counsel made numerous arguments on behalf of Young, which the Court granted, including: (i) defendant's request for a term of imprisonment at the low-end of the guideline range (30-37 months); (ii) defendant's request that no fine be imposed; and (iii) defendant's request for a judicial recommendation that the term of imprisonment be served at the McRae facility in Georgia.    See Exhibit 4 (Tr. of Feb. 6, 2004 Hr'g).

Moreover, at his Rule 11 Hearing, Young expressly admitted that he was satisfied with

the representation that he received and that his attorney advised him of all available defenses:

| | |
|---|---|
| COURT: | Have you had an adequate opportunity to discuss this case with Mr. Watkins, your attorney? |
| YOUNG: | Yes, Your Honor. |
| COURT: | Do you feel you've received from him the kind of legal advice that you need to make your own decision about whether or not to plead guilty? |
| YOUNG: | Yes, Your Honor. |
| COURT: | And are you satisfied you've received the information that you need about the strategies and defenses that you would have to these charges? |

YOUNG:        Yes, Your Honor.

Exhibit 3 (Tr. of Jan. 12, 2004 Hrg) at 7, 12.  Based on the record before the Court, Young's

foregoing claims of ineffectiveness are simply hollow.

Young's claim that his counsel failed to "argue for a better plea agreement" also lacks

merit.  There was no plea agreement in Young's criminal case, or any proposed plea agreement

produced by Young.  See Exhibit 3 (Tr. of Jan. 12, 2004 Hr'g) at 7 (setting forth Young's

response that no plea agreement exists).  As such, there is simply no support for Young's

argument that defense counsel should have sought a "better" plea agreement.

Finally, the record clearly shows that Young's attorney zealously sought all possible

departures during the sentencing phase of his case.  Specifically, as set forth above, defense

counsel vigorously argued  that the Court should:  (a) reduce Young's offense level by 3-4 levels

to account for his minor role in the offense, and (b) downwardly depart to an 18-month sentence

on grounds of (i) aberrant behavior, (ii) Young's family circumstances, (iii) Bureau of Prison

policies that treat Young, an alien, unfairly, and (iv) the combination of these factors.   Young's

counsel also successfully argued for the application of a 2-level safety valve adjustment, which

the government initially opposed and on which the Court held two separate hearings.  As

detailed above, the ultimate sentence imposed by the Court incorporated many elements

requested by defense counsel.

For all of the foregoing reasons, not only has Young failed to carry his burden of proof

with respect to the bald assertions quoted above, but the record affirmatively shows that Young

received a level of representation that far exceeded the constitutional standard set forth in

Strickland.

3.        Petitioner's Claim of Ineffectiveness Based on U.S.S.G. § 3E1.1

**(Acceptance of Responsibility) is Frivolous**

In his second claim for relief, Young argues that he was denied effective assistance of counsel because his lawyer "should have requested a complete three point reduction since the defendant had accepted responsibility for the offense ... in a complete and timely manner." § 2255 Motion at 5.  This claim is frivolous.  Young <u>did</u>, in fact, receive a three-point reduction for acceptance of responsibility.  As such, Young cannot prove either (i) deficient performance, or (ii) actual prejudice under <u>Strickland</u>.

Specifically, Young's PSR set forth the following guideline application:

|  |  |
|---|---|
| Base Offense Level: | 26 |
| Adjustment for Minor Role: | -2 |
| **Adjustment under § 3E1.1:** | **-3** |
| TOTAL OFFENSE LEVEL: | 21 |

The PSR also stated that the Probation Office had determined that Young met the criteria 1-4 of U.S.S.G. § 5C1.2 (the "safety-valve" provision) and that if the Court determined that criterion 5 was met, an additional two (2) level reduction was warranted.  After conducting two (2) hearings on the issue of the applicability of the safety-valve provision, this Honorable Court adopted the guideline application in the PSR with an additional finding that Young had, in fact, met all five criteria of U.S.S.G. § 5C1.2.  <u>See</u> <u>Exhibit 1</u> at Stmt of Reasons.  As such, the following additional calculation was made:

|  |  |
|---|---|
| Adjustment under § 5C1.2. | -2 |
| TOTAL OFFENSE LEVEL: | 19 |

Application of this Total Offense Level of 19 to Young's Criminal History Category of I yielded an applicable guideline sentencing range of 30-37 months.  After hearing argument from both the government and Young's defense attorney, this Honorable Court sentenced Young to 30

months imprisonment (the low-end of the guideline range).  As Young did, in fact, receive a

three-point reduction for acceptance of responsibility, he simply can not  prove either (i)

deficient performance or (ii) actual prejudice under <u>Strickland</u>.  His second claim for relief

therefore fails.

**B.     Young's § 2255 Motion is Subject to Summary Dismissal**

For all of the reasons discussed above, Young has not carried his burden of proof in this

matter.  Specifically, nothing in Young's motion and/or supporting memorandum establishes

either: (i) constitutional ineffectiveness and concomitant prejudice under <u>Strickland</u>, or (ii) that

Young's conviction involved an unconstitutional, "fundamental defect which inherently results

in a complete miscarriage of justice," or "an omission inadvertent with the rudimentary demands

of fair procedure."  <u>Hill</u>, 368 U.S. at 428; <u>Addonizio</u>, 442 U.S. at 185.  As such, his § 2255

Motion should be dismissed without a hearing.

In light of the heavy burden of proof governing § 2255 motions, evidentiary hearings are

the rare exception, not the rule.  <u>See</u> <u>United States v. McGill</u>, 11 F.3d 233, 225 (1st Cir. 1993);

<u>United States v. Mala</u>, 7 F.3d 1058, 1062 (1st Cir. 1993); <u>United States v. Tardiff</u>, 969 F.2d

1283, 1286 (1st Cir. 1992); <u>United States v. DeCologero</u>, 821 F.2d 39, 44 (1st Cir. 1987).  As

stated by the First Circuit, "in most situations, motions can be 'heard' effectively on the papers,

with the parties submitting evidentiary proffers by means of affidavits, documentary exhibits,

and the like."  <u>McGill</u>, 11 F.3d at 225 (citing <u>Aoude v. Mobil Oil Corp.</u>, 862 F.2d 890, 894 (1st

Cir. 1988)); <u>DeCologero</u>, 821 F.2d at 44.  As such, a petitioner seeking an evidentiary hearing

must demonstrate a need for special treatment.  <u>McGill</u>, 11 F.3d at 225; <u>United States v. Panitz</u>,

907 F.2d 1267, 1273-74 (1st Cir. 1990).

Indeed, a hearing is unnecessary "when a § 2255 motion is conclusively refuted as to the

alleged facts by the files and records of the case."  <u>McGill</u>, 11 F.3d at 225; <u>Moran v. Hogan</u>, 494

F.2d 1220, 1222 (1st Cir. 1974). In other words, § 2255 motions can, and should, be dismissed without a hearing if the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or if the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact. <u>Carey v. United States</u>, 50 F.3d 1097, 1098 (1st Cir. 1995); <u>Murchu v. United States</u>, 926 F.2d 50, 55 (1st Cir.), <u>cert. denied</u>, 502 U.S. 828 (1991); <u>Porcaro v. United States</u>, 784 F.2d 38, 40 (1st Cir. 1986), <u>cert. denied</u>, 479 U.S. 916 (1986); <u>Shraiar v. United States</u>, 736 F.2d 817, 818 (1st Cir. 1984); <u>Mack v. United States</u>, 635 F.2d 20, 26-27 (1st Cir. 1980); <u>see</u> <u>also</u> Rule 4(b), Rules Governing Section 2255 Proceedings. For all of the reasons fully discussed above, such a case exists here. Summary dismissal is therefore appropriate.

## IV.    CONCLUSION

For all of the foregoing reasons, the United States respectfully submits that Petitioner Dane Harrington Young's § 2255 Motion should be denied and that this matter should be summarily dismissed.

DATED:    June 3, 2005                     Respectfully submitted,

                                          MICHAEL J. SULLIVAN
                                          United States Attorney


                              By:     */s/ Lisa M. Asiaf*
                                          LISA M. ASIAF
                                          Assistant U.S. Attorney
                                          District of Massachusetts
                                          Tel: (617) 748-3268

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery to Dane Harrington Young, Prison No. 24661-038, CCA/McRae, 1000 A Jim Hammock Drive, McRae, GA 31055.

This 3rd day of June 2005.


*/s/ Lisa M. Asiaf*
Lisa M. Asiaf
Assistant United States Attorney
District of Massachusetts

# **EXHIBIT 1**

AO 245B Sheet 1 - Judgment in a Criminal Case - D. Massachusetts (03/02)

# United States District Court
## District of Massachusetts

UNITED STATES OF AMERICA

v.

**DANE YOUNG**

**JUDGMENT IN A CRIMINAL CASE**
(For Offenses Committed On or After November 1, 1987)

Case Number: **1: 03 CR 10103   - 001 - DPW**

Timothy Watkins, Assistant Federal Defender

Defendant's Attorney

**THE DEFENDANT:**

[x] pleaded guilty to count(s): 1 of the Indictment on January 12, 2004.
[ ] pleaded nolo contendere to counts(s)_____ which was accepted by the court.
[ ] was found guilty on count(s) _____ after a plea of not guilty.

Accordingly, the court has adjudicated that the defendant is guilty of the following offense(s):

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 USC § 952(a) & 960(b)(2)B) | Importation of Cocaine | 03/17/03 | I |
| 21 USC §853 | Drug Forfeiture Allegation | | |

[ ] See continuation page

The defendant is sentenced as provided in pages 2 through 6  of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ] The defendant has been found not guilty on counts(s)_____ and is discharged as to such count(s).

[ ] Count(s) _____ is  dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States Attorney of any material change in the defendant's economic circumstances.

Defendant's Soc. Sec. No.: XXX-XX-1444

Defendant's Date of Birth:  XX/XX/1976

Defendant's USM No.:  24661-038

Defendant's Residence Address:
11165 SW 6th Street, Apt. 3-207
Pembroke Pines, FL 33025

Defendant's Mailing Address:
same as above

02/06/04

Date of Imposition of Judgment

/s/ Douglas P. Woodlock

Signature of Judicial Officer

The Honorable Douglas P. Woodlock

Name and Title of Judicial Officer

Judge, U.S. District Court

Date

2/6/04

AO 245B Sheet 2 - Imprisonment - D. Massachusetts (10/01)

CASE NUMBER: **1: 03 CR 10103  - 001 - DPW**                    Judgment - Page  2  of  6
DEFENDANT:

## DANE YOUNG

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of      30    month(s)

The defendant shall receive credit for time served from 3/18/03 to 4/30/03.

[x]  The court makes the following recommendations to the Bureau of Prisons:

The defendant should be designated to serve his sentence at the McRae facility in Georgia in order to 1) facilitate family visitation; and 2) ease the process of deportation to Jamaica.

[x]  The defendant is remanded to the custody of the United States Marshal.

[ ]  The defendant shall surrender to the United States Marshal for this district:
   [ ] at _____ on _____
   [ ] as notified by the United States Marshal.

[ ]  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:
   [ ] before _____ on _____
   [ ] as notified by the United States Marshal.
   [ ] as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
Deputy U.S. Marshal

AO 245B  Sheet 3 - Supervised Release - D. Massachusetts (10/01)

CASE NUMBER: 1: 03 CR 10103 - 001 - DPW

DEFENDANT:

Judgment - Page 3 of 6

## DANE YOUNG
## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of     36     month(s)

**☒** See continuation page

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐     The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check if applicable.)

**☒**     The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). The defendant shall also comply with the additional conditions on the attached page (if indicated above).

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependants and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Continuation Page - Supervised Release/Probation

CASE NUMBER: **1: 03 CR 10103 - 001 - DPW**             Judgment - Page   4 of   6
DEFENDANT:
**DANE YOUNG**

## Continuation of Conditions of ☒ Supervised Release ☐ Probation

1. THE DEFENDANT SHALL NOT COMMIT ANOTHER FEDERAL, STATE, OR LOCAL CRIME.

2. THE DEFENDANT SHALL COMPLY WITH THE STANDARD CONDITIONS SET FORTH IN THIS JUDGMENT THAT ARE DESCRIBED AT U.S.S.G. §5B1.3(c).

3. THE DEFENDANT SHALL NOT POSSESS A FIREARM OR OTHER DANGEROUS WEAPON.

4. THE DEFENDANT SHALL PAY THE SPECIAL ASSESSMENT FORTHWITH OR ACCORDING TO A COURT APPROVED PAYMENT SCHEDULE TO BE ESTABLISHED BY THE U.S. PROBATION OFFICE.

5. THE DEFENDANT SHALL NOTIFY THE UNITED STATES ATTORNEY FOR THE DISTRICT OF MASSACHUSETTS WITHIN 30 DAYS OF ANY CHANGE OF MAILING OR RESIDENCE ADDRESS THAT OCCURS WHILE ANY PORTION OF THE SPECIAL ASSESSMENT REMAINS UNPAID.

6. WITHIN 72 HOURS OF RELEASE FROM THE CUSTODY OF THE BUREAU OF PRISONS, THE DEFENDANT SHALL REPORT IN PERSON TO THE PROBATION OFFICE IN THE DISTRICT TO WHICH HE WAS RELEASED.

7. IF DEPORTED, THE DEFENDANT SHALL LEAVE THE UNITED STATES AND SHALL NOT RE-ENTER WITHOUT THE EXPRESS WRITTEN PERMISSION OF THE SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY.

8. THE DEFENDANT SHALL NOT USE ANY UNLAWFUL CONTROLLED SUBSTANCE.

9. THE DEFENDANT SHALL SUBMIT TO DRUG TESTING AS DIRECTED BY THE U.S. PROBATION OFFICER.

AO 245B   Judgment in a Criminal Case - D. Massachusetts (10/01)
    Sheet 5, Part A — Criminal Monetary Penalties

Judgment - Page 5 of 6

CASE NUMBER: **1: 03 CR 10103  - 001 - DPW**
DEFENDANT:              **DANE YOUNG**
              **CRIMINAL MONETARY PENALTIES**

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $100.00 |  |  |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid in full prior to the United States receiving payment.

| **Name of Payee** | **\*Total Amount of Loss** | **Amount of Restitution Ordered** | **Priority Order or Percentage of Payment** |
|---|---|---|---|
|  |  |  | ☐ See Continuation Page |
| **TOTALS** | $0.00 | $0.00 |  |

☐ If applicable, restitution amount ordered pursuant to plea agreement _____

☐ The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

    ☐ the interest requirement is waived for the    ☐ fine and/or    ☐ restitution.

    ☐ the interest requirement for the    ☐ fine and/or    ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18, United States Code, for offenses committed on or after September 13, 1994 but before April 23, 1996.

AO 245B    Judgment in a Criminal Case - D. Massachusetts (10/01)
           Sheet 5, Part B — Criminal Monetary Penalties

CASE NUMBER:  **1: 03 CR 10103  - 001 - DPW**                    Judgment - Page  6  of  6
DEFENDANT:              **DANE YOUNG**

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

A  ☐  Lump sum payment of _____ due immediately, balance due

       ☐ not later than _____ , or
       ☐ in accordance with ☐ C,   ☐ D, or   ☐ E below; or

B  ☐  Payment to begin immediately (may be combined with C, D, or E below); or

C  ☐  Payment in _____ (e.g., equal, weekly, monthly, quarterly) installments of _____ over a period of
       _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in _____ (e.g., equal, weekly, monthly, quarterly) installments of _____ over a period of
       _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
       term of supervision; or

E  ☒  Special instructions regarding the payment of criminal monetary penalties:

       The Special Assessment shall be paid forthwith or pursuant to a Court approved payment schedule to be
       established by the U.S. probation officer.

Unless the court has expressly ordered otherwise in the special instruction above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court, unless otherwise directed by the court, the probation officer, or the United States attorney.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

   Case Number, Defendant Name, and Joint and Several Amount:

                                                                    ☐ See Continuation
                                                                      Page

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest (7) penalties, and (8) costs, including cost of prosecution and court costs.

# UNITED STATES DISTRICT COURT
### District of Massachusetts

UNITED STATES OF AMERICA

### V.

DANE YOUNG

### STATEMENT OF REASONS

Case Number: **1: 03 CR 10103 - 001 - DPW**

Timothy Watkins, Assistant Federal Defender

Defendant's Attorney

[ ]    The court adopts the factual findings and guideline application in the presentence report.

## OR

[x]    The court adopts the factual findings and guideline application in the presentence report, except (see attachment, if necessary):

Defendant meets the criteria of U.S.S.G. §5C1.2.

[ ] See Continuation Page

**Guideline Range Determined by the Court:**

| | | |
|---|---|---|
| Total Offense Level: | 21 | |
| Criminal History Category: | I | |
| Imprisonment Range: | 30 to 37 | months |
| Supervised Release Range: | 3 to 5 | years |
| Fine Range: | $ 7,500.00 to $ 2,000,000.00 | |

Defendant's Soc. Sec. No.: XXX-XX-1444

Defendant's Date of Birth: XX/XX/1976

Defendant's USM No.: 24661-038

Defendant's Residence Address:

11165 SW 6th Street, Apt. 3-207
Pembroke Pines, FL 33025

02/06/04

Date of Imposition of Judgment

/s/ Douglas P. Woodlock

Signature of Judicial Officer

The Honorable Douglas P. Woodlock

Judge, U.S. District Court

Name and Title of Judicial Officer

2/6/04

Date

Defendant's Mailing Address:

same as above

AO 245B    Judgment in a Criminal Case - D. Massachusetts
           Statement of Reasons - Sheet 2

Statement of Reasons - Page   2   of   3

DEFENDANT:      DANE YOUNG
CASE NUMBER:  1: 03 CR 10103   - 001 - DPW

# STATEMENT OF REASONS

[X] Fine waived or below the guideline range because of inability to pay.

Total Amount of Restitution:   $ _____

[ ] Discretionary restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims, pursuant to 18 U.S.C. § 3663(a)(B)(ii) (or in offenses committed before April 23, 1996, pursuant to 18 U.S.C. § 3663(d)).

[ ] Restitution pursuant to the mandatory victim restitution provisions is not ordered in this title 18 property offense because the number of identifiable victims is so large as to make restitution impracticable, pursuant to 18 U.S.C. § 3663A(c)(3)(A).

[ ] Restitution pursuant to the mandatory victim restitution provisions is not ordered in this title 18 property offense because determining complex issues of fact and related to the cause of amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process, pursuant to 18 U.S.C. § 3663A(c)(3)(B).

[ ] For offenses committed on or after September 13, 1994 but before April 23, 1996 that require the total amount of loss to be stated, pursuant to Chapters 109A, 110, 110A, and 113A of Title 18, restitution is not ordered because the economic circumstances of the defendant do not allow for the payment of any amount of a restitution order, and do not allow for the payment of any or some portion of a restitution order in the foreseeable future under any reasonable schedule of payments.

[ ] Partial restitution is ordered, pursuant to 18 U.S.C. § 3553(c), for the following reason(s):

AO 245B    Judgment in a Criminal Case - D. Massachusetts
Statement of Reasons - Sheet 3

Statement of Reasons - Page __3__ of __3__

DEFENDANT:    DANE YOUNG
CASE NUMBER:    1: 03 CR 10103  – 001 – DPW

## STATEMENT OF REASONS

[X]  The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the
sentence called for by the application of the guidelines.

### OR

[ ]  The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reasons:

### OR

[ ]  The sentence departs from the guideline range:

[ ]  upon motion of the government, as a result of a defendant's substantial assistance, or

[ ]  for the following specific reason(s):

[ ]  See Continuation Page

# **EXHIBIT 2**

CASREF, PRIOR

# United States District Court
## District of Massachusetts (Boston)
## CRIMINAL DOCKET FOR CASE #: 1:03-cr-10103-DPW-ALL

Case title: USA v. Young
Magistrate judge case number: 1:03-mj-01660 3 _ cviu

Date Filed: 04/09/2003

Assigned to: Judge Douglas P.
Woodlock

**Defendant**

**Dane Young** (1)
*TERMINATED: 02/06/2004*

represented by **Timothy G. Watkins**
Federal Defender's Office
District of Massachusetts
408 Atlantic Ave.
Third Floor
Suite 328
Boston, MA 02210
617-223-8061
Fax: 617-223-8080
Email: timothy_watkins@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

**Pending Counts**

21:952(a)(1) and 960(a) = CI.F-
IMPORTATION OF COCAINE
(1)

**Disposition**

Sentence Imposed: 30 months
imprisonment; judicial recommendation
for designation at McRae; 3 years
supervised release with standard and
special conditions, $100 Special
Assessment, No Fine.

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

None

**Disposition**

**Highest Offense Level (Terminated)**

None

**Complaints**

In Violation of Title 21: 952(a) knowingly and intentionally an unlawfully import into the U.S. from a place outside thereof, approximately one kilogram of heroin, a class I controlled substance. [ 1:03-m -1660 ]

**Disposition**

Sentence Imposed: 30 months imprisonment; judicial recommendation for designation at McRae; 3 years supervised release with standard and special conditions, $100 Special Assessment, No Fine.

---

**Notice**

**Pretrial Services**                  represented by  **Pretrial Services**
US Pretrial Services
1 Courthouse Way
Boston, MA 02210
*ATTORNEY TO BE NOTICED*

---

**Plaintiff**

**USA**                  represented by  **Dickens Mathieu**
United States Attorney's Office
John Joseph Moakley Federal
Courthouse
1 Courthouse Way
Suite 9200
Boston, MA 02210
617-748-3227
Fax: 617-748-3965
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/19/2003 | 1 | COMPLAINT as to Dane Young , filed. [ 1:03-m -1660 ] (mlb) (Entered: 03/19/2003) |
| 03/19/2003 | 2 | AFFIDAVIT of John Coleman, by USA as to Dane Young , re: [1-1] complaint , filed. [ 1:03-m -1660 ] (mlb) (Entered: 03/19/2003) |
| 03/20/2003 | 12 | Mag. Judge C. B. Swartwood III . ORDER entered Appointing Federal Public Defender Tim Watkins for Dane Young, cc/cl. (lr) (Entered: 04/15/2003) |
| 03/21/2003 | 3 | MOTION by USA , as to Dane Young to amend [1-1] complaint filed, c/s. Referred to Mag. Judge C. B. Swartwood III [ 1:03-m -1660 ] (sj) (Entered: 03/25/2003) |
| 03/21/2003 | | Mag. Judge C. B. Swartwood III . ENDORSED ORDER as to Dane Young : granting [3-1] motion to amend [1-1] complaint as to Dane |

| | | |
|---|---|---|
| | | Young (1)."Motion ALLOWED." CC/CL. [ 1:03-m -1660 ] (sj) (Entered: 03/25/2003) |
| 03/21/2003 | | Initial appearance as to Dane Young held ; Detention Hearing set for 2:45 3/25/03 for Dane Young (Defendant informed of rights.) . [ 1:03-m -1660 ] (sj) (Entered: 03/25/2003) |
| 03/21/2003 | 4 | Mag. Judge C. B. Swartwood III . CLERK'S NOTES as to Dane Young , re: initial appearance; Case called counsel and defendant appear for initial appearance. Court allows motion to amend complaint. Government request detention, defendant remanded to custody of the US Marshalls. Detention hearing on 03/25/03 at 2:45 ; Court Reporter: Tape 03-21 [ 1:03-m -1660 ] (sj) (Entered: 03/25/2003) |
| 03/21/2003 | 5 | Mag. Judge C. B. Swartwood III . ORDER entered for temporary detention as to Dane Young Bond set to no bail for Dane Young. Detention hearing set for 3/25/03 at 2:45. [ 1:03-m -1660 ] (sj) (Entered: 03/25/2003) |
| 03/21/2003 | 6 | CJA 23 FINANCIAL AFFIDAVIT by Dane Young , as to Dane Young , filed. [ 1:03-m -1660 ] (sj) (Entered: 03/28/2003) |
| 03/25/2003 | | Detention hearing as to Dane Young held . [ 1:03-m -1660 ] (sj) (Entered: 03/28/2003) |
| 03/25/2003 | 7 | Mag. Judge C. B. Swartwood III . CLERK'S NOTES as to Dane Young , re: detention hearing; Counsel and defendant appear for detention hearing, Government calls John Coleman, US Customs Agent, to testify, witness sworn in, direct,cross, redirect, recross, witness excused. Government moves for detention, matter taken under advisement, order to issue by Thursday 3/27/03.; Court Reporter: Tape 03-21 [ 1:03-m -1660 ] (sj) (Entered: 03/28/2003) |
| 03/25/2003 | 8 | Witness and Exhibit list as to Dane Young , filed. [ 1:03-m -1660 ] (sj) (Entered: 03/28/2003) |
| 03/28/2003 | 9 | Mag. Judge C. B. Swartwood III. Memorandum of Probable Cause and ORDER on the Government's motion for detention entered as to Dane Young, Bond reset to NO BAIL for Dane Young, cc/cl. [ 1:03-m -1660 ] (lr) (Entered: 03/28/2003) |
| 04/09/2003 | 10 | INDICTMENT returned Dane Young (1) count(s) 1 . (sad) (Entered: 04/10/2003) |
| 04/09/2003 | | Judge Douglas P. Woodlock Referral to Mag. Judge C. B. Swartwood III as to Dane Young . Purpose: pretrial (sad) (Entered: 04/10/2003) |
| 04/10/2003 | 11 | MOTION by Dane Young for review of [9-1] detention order , filed. c/s (mr) (Entered: 04/14/2003) |
| 04/22/2003 | 13 | NOTICE issued of Hearing/Conference as to Dane Young, reset Detention Hearing for 10:00 4/25/03 for Dane Young (eaf) (Entered: 04/23/2003) |
| | | |

| 04/23/2003 | 17 | Transcript of proceedings held on 3/25/03 hearing date: before Judge Woodlock, as to Dane Young , Court Reporter: Apex Reporting, filed. (mr) (Entered: 04/29/2003) |
|---|---|---|
| 04/24/2003 | 19 | RESPONSE by USA as to Dane Young in opposition to [11-1] motion for review of [9-1] detention order , filed. (mr) (Entered: 04/29/2003) |
| 04/25/2003 | 14 | NOTICE issued of Hearing/Conference as to Dane Young, set status conference for 3:15 6/6/03 for Dane Young before Mag. Judge C. B. Swartwood III , cc/cl. (lr) (Entered: 04/25/2003) |
| 04/25/2003 | 15 | Mag. Judge C. B. Swartwood III . ORDER ON EXCLUDABLE DELAY entered as to Dane Young . Time ordered excluded from 4/25/03 to 5/23/03, cc/cl. (lr) (Entered: 04/25/2003) |
| 04/25/2003 | 16 | Mag. Judge C. B. Swartwood III . SCHEDULING ORDER entered as to Dane Young, cc/cl. (lr) (Entered: 04/25/2003) |
| 04/25/2003 | | Motion hearing as to Dane Young re: [11-1] motion for review of [9-1] detention order . (mr) (Entered: 04/29/2003) |
| 04/25/2003 | 18 | Judge Douglas P. Woodlock . CLERK'S NOTES as to Dane Young , re: motion hearing re: motion for review of detention order; court declines to consider a PTS report on another defendant; PTS is to explore what FLA PTS says regarding supervision; deft to see fi relative or employer would sign a bond to secure defendant's appearance; court would consider allowing deft to work in an office (vs as a currier); family members to submit a financial affidavit; further Motion hearing before Judge Douglas P. Woodlock set for 10:30 4/29/03 for Dane Young [11-1] motion for review of [9-1] detention order ; Court Reporter: Pam Owens (mr) (Entered: 04/29/2003) |
| 04/25/2003 | | Arraignment as to Dane Young held Dane Young (1) count(s) 1 . (mr) (Entered: 04/29/2003) |
| 04/25/2003 | | PLEA entered by Dane Young . Court accepts plea. Not Guilty: , Dane Young (1) count(s) 1 (mr) (Entered: 04/29/2003) |
| 04/25/2003 | 18 | Judge Douglas P. Woodlock . CLERK'S NOTES as to Dane Young , re: arraignment; plea of not guity entered; MJ Swartwood to issue a discovery order and order on excludable delay; Court Reporter: Pam Owens (mr) (Entered: 04/29/2003) |
| 04/25/2003 | | Judge Douglas P. Woodlock . ENDORSED ORDER as to Dane Young : granting [11-1] motion for review of [9-1] detention order as to Dane Young (1). A further hearing on detention/bail is set for 4/29/03 at 10:30. (mr) (Entered: 04/29/2003) |
| 04/29/2003 | | Detention review hearing as to Dane Young held . (mr) (Entered: 05/02/2003) |
| 04/29/2003 | 20 | Judge Douglas P. Woodlock . CLERK'S NOTES as to Dane Young , re: detention review hearing; court finds conditions of release available; deft released on conditions; Court Reporter: Pam Owens (mr) (Entered: |

| | | 05/02/2003) |
|---|---|---|
| 04/29/2003 | 21 | Judge Douglas P. Woodlock . ORDER entered setting Conditions of Release for Dane Young: $50,000 Surety Bond; deft shall report to PTS in Ft. Lauderdale, FL as directec by PTS; shall maintain employment as pre-arranged; obtain no passport; maintain residence; travel rested to MA and S.D. of FL and points in between for travel to and from court; refrain from possessing a firearm or other dangerous weapon; refrain from use/possession of unlawful controlled substances; submit to testing as required by PTS; the $50,000 appearance bond shall be signed by defendant's mother Janet Young and sister Karel Young as co-sureties; deft shall be on electronic monitoring to be paid for by deft; deft may leave for medical appointments, religious services and to work at least 40 hours per week, only with the pre-approval of PTS. (mr) (Entered: 05/02/2003) |
| 04/29/2003 | 22 | Judge Douglas P. Woodlock . ORDER entered as to Dane Young : US Marshals Service to provide deft's airfare between Boston and Miami, as well as subsistence/per diem to secure his appearance in Souther District of Florida on or after 4/29/03. (mr) (Entered: 05/02/2003) |
| 04/29/2003 | | $50,000 Appearance (Surety) BOND entered as to Dane Young . (Bond is to be signed by co-sureties Janet Yound and Karel Young in Ft. Lauderdale, FL) (mr) (Entered: 05/02/2003) |
| 04/29/2003 | 23 | Letter (non-motion) filed by Timothy G. Watkins as to Dane Young , dated: 4/28/03, re: copies of financial affidavits of co-sureties. (mr) (Entered: 05/02/2003) |
| 05/06/2003 | | COPY OF BOND with original signatures of co-sureties entered as to Dane Young. (Forwarded from USDC Southern District of FL) (mr) (Entered: 05/07/2003) |
| 06/05/2003 | 24 | Sealed Document (Greenberg, Rebecca) (Entered: 06/05/2003) |
| 06/06/2003 | 25 | JOINT SUBMISSION pursuant to Local Rule 116.5(C) as to Dane Young (Jones, Sherry) (Entered: 06/06/2003) |
| 06/13/2003 | 26 | Judge Charles B. Swartwood : INITIAL STATUS REPORT as to Dane Young; Status Conference set for 7/28/2003 02:00 PM in Courtroom 1 before Charles B. Swartwood, cc/cl. (Roland, Lisa) (Entered: 06/16/2003) |
| 06/13/2003 | 27 | Judge Charles B. Swartwood : ORDER ON EXCLUDABLE DELAY as to Dane Young; Time excluded from May 23, 2003 until July 28, 2003, cc/cl. (Roland, Lisa) (Entered: 06/16/2003) |
| 07/28/2003 | | Clerk's Notes for proceedings held before Judge Charles B. Swartwood :Status Conference as to Dane Young held on 7/28/2003; Status Conference set for 9/3/2003 10:15 AM in Courtroom 16 IN BOSTON before Charles B. Swartwood. (Tape #03-14 cnf.) (Roland, Lisa) (Entered: 07/29/2003) |
| 07/28/2003 | 28 | Judge Charles B. Swartwood : STATUS REPORT as to Dane Young |

| | | Status Conference set for 9/3/2003 10:15 AM in Courtroom 16 before Charles B. Swartwood. cc/cl. (Roland, Lisa) (Entered: 07/29/2003) |
|---|---|---|
| 07/28/2003 | 29 | Judge Charles B. Swartwood : ORDER ON EXCLUDABLE DELAY as to Dane Young; Time excluded from July 28, 2003 until September 3, 2003, cc/cl. (Roland, Lisa) (Entered: 07/29/2003) |
| 09/03/2003 | | Electronic Clerk's Notes for proceedings held before Judge Charles B. Swartwood :Status Conference as to Dane Young held on 9/3/2003. Case called, Counsel appear for status conference, Counsel request additional time, Case continued, Time to be excluded. Status Conference set for 9/23/2003 03:00 PM in Courtroom 16 before Magistrate Judge Charles B. Swartwood. (Tape #03-55.) (Roland, Lisa) (Entered: 09/03/2003) |
| 09/03/2003 | 30 | Judge Charles B. Swartwood : STATUS REPORT as to Dane Young; Status Conference set for 9/23/2003 03:00 PM in Courtroom 16 before Magistrate Judge Charles B. Swartwood, cc/cl. (Roland, Lisa) (Entered: 09/05/2003) |
| 09/03/2003 | 31 | JOINT SUBMISSION pursuant to Local Rule 116.5(C) as to Dane Young (Rynne, Michelle) (Entered: 09/08/2003) |
| 09/03/2003 | 32 | Judge Charles B. Swartwood : ORDER ON EXCLUDABLE DELAY as to Dane Young; Time excluded from September 3, 2003 until September 23, 2003, cc/cl. (Roland, Lisa) (Entered: 09/18/2003) |
| 09/23/2003 | | Electronic Clerk's Notes for proceedings held before Judge Charles B. Swartwood :Status Conference as to Dane Young held on 9/23/2003. Case called, Counsel appear for Status Conference, Case to be sent back to DJ. (Tape #03-60.) (Roland, Lisa) (Entered: 09/23/2003) |
| 09/23/2003 | 33 | NOTICE OF HEARING as to Dane Young. Initial Pretrial Conference set for 10/8/2003 at 09:30 AM in Courtroom 1 before Judge Douglas P. Woodlock. (Greenberg, Rebecca) (Entered: 09/23/2003) |
| 09/24/2003 | 34 | MOTION to order presentence report be prepared in advance of anticipated guilty plea as to Dane Young . (Rynne, Michelle) (Entered: 09/29/2003) |
| 09/24/2003 | 35 | Judge Charles B. Swartwood : Final STATUS REPORT as to Dane Young, cc/cl. (Roland, Lisa) (Entered: 10/02/2003) |
| 10/02/2003 | | Case as to Dane Young no longer referred to Charles B. Swartwood. (Roland, Lisa) (Entered: 10/02/2003) |
| 10/08/2003 | | Judge Douglas P. Woodlock : Electronic ORDER entered granting 34 Defendant's Request to Order Presentence Report Be Prepared in Advance of Anticipated Guilty Plea. (Greenberg, Rebecca) (Entered: 10/08/2003) |
| 10/08/2003 | | Electronic Clerk's Notes for proceedings held before Judge Douglas P. Woodlock :Pretrial Conference as to Dane Young held on 10/8/2003. Defendant's motion for a Pre-Plea PSR argued. Court allows motion. A Rule 11 Hearing and Sentencing Hearing is set for 1/5/2004 at 03:30 PM |

| | | in Courtroom 1 before Judge Douglas P. Woodlock. (Court Reporter Pam Owens.) (Greenberg, Rebecca) (Entered: 10/08/2003) |
|---|---|---|
| 10/08/2003 | 36 | Judge Douglas P. Woodlock : ORDER entered: PROCEDURAL ORDER re sentencing hearing as to Dane Young Plea and Sentence set for 1/5/2004 at 03:30 PM in Courtroom 1 before Judge Douglas P. Woodlock. (Greenberg, Rebecca) (Entered: 10/08/2003) |
| 10/16/2003 | 37 | Letter (non-motion) by Dickens Mathieu regarding FRCP 16 and LR 116 as to Dane Young. (Rynne, Michelle) (Entered: 10/17/2003) |
| 10/16/2003 | 38 | Letter (non-motion) by Dickens Mathieu regarding FRCP 32(b)(4) as to Dane Young. (Rynne, Michelle) (Entered: 10/17/2003) |
| 01/05/2004 | | Electronic Clerk's Notes for proceedings held before Judge Douglas P. Woodlock :Hearing as to Dane Young held on 1/5/2004. The plea and sentencing previously set for this date cannot go forward, as defendant failed to appear in Court, due to problems arranging affordable transportation from Florida to Massachusetts. Defense counsel moves for a continuance of the plea and sentencing hearing. The motion is allowed. The plea and sentencing hearing is re-set to JANUARY 12, 2004 at 11:00 a.m. The Government shall respond to Defendant's motion for downward departure by January 9, 2004. (Court Reporter Pam Owens.) (Greenberg, Rebecca) (Entered: 01/05/2004) |
| 01/05/2004 | | Reset Hearings as to Dane Young : Plea and Sentence set for 1/12/2004 at 11:00 AM in Courtroom 1 before Judge Douglas P. Woodlock. (Greenberg, Rebecca) (Entered: 01/05/2004) |
| 01/05/2004 | 39 | MOTION to Continue Rule 11 and Sentencing Hearing to 1/8/04 as to Dane Young . (Rynne, Michelle) (Entered: 01/06/2004) |
| 01/05/2004 | 40 | SENTENCING MEMORANDUM and MOTION for downward Departure as to Dane Young . (Rynne, Michelle) (Entered: 01/06/2004) |
| 01/06/2004 | | Judge Douglas P. Woodlock : Electronic ORDER entered granting 39 Motion to Continue as to Dane Young (1). Plea and Sentencing set for 1/12/04 at 11am. (Greenberg, Rebecca) (Entered: 01/06/2004) |
| 01/09/2004 | 41 | SENTENCING MEMORANDUM and Opposition by USA as to Dane Young re 40 MOTION for downward Departure. (Rynne, Michelle) (Entered: 01/14/2004) |
| 01/09/2004 | 42 | AFFIDAVIT of John Coleman as to Dane Young. (Rynne, Michelle) (Entered: 01/14/2004) |
| 01/12/2004 | | Judge Douglas P. Woodlock : Electronic ORDER entered denying 40 Motion for Downward Departure as to Dane Young (1), for reasons set forth on the record in open Court on 1/12/04. (Greenberg, Rebecca) (Entered: 01/12/2004) |
| 01/12/2004 | | Electronic Clerk's Notes for proceedings held before Judge Douglas P. Woodlock :Plea and Sentence Hearing held on 1/12/2004 as to Dane Young. Plea of guilty on Count 1 of the Indictment entered. Sentencing |

| | | hearing held. A factual dispute arises and Court requires an evidentiary hearing on the issues presented. The Court revokes defendants bail and orders the defendant remanded to federal custody pending sentencing, set for 2/6/04 at 2:30 p.m. (Court Reporter Pam Owens.) (Greenberg, Rebecca) (Entered: 01/12/2004) |
| 01/12/2004 | | NOTICE OF RESCHEDULING Sentencing Hearing as to Dane Young: AFurther Sentencing/Evidentiary Hearing is set for 2/6/2004 at 2:30 PM in Courtroom 1 before Judge Douglas P. Woodlock. (Greenberg, Rebecca) (Entered: 01/12/2004) |
| 02/06/2004 | | Electronic Clerk's Notes for proceedings held before Judge Douglas P. Woodlock :Sentencing held on 2/6/2004 for Dane Young (1), Govt withdraws objections to safety valve; Sentence Imposed: 30 months imprisonment; judicial recommendation for designation to McRae; 3 years supervised release with standard and special conditions, $100 Special Assessment, No Fine. (Court Reporter Marie Cloonan.)(clerk covering: Michelle Rynne) (Greenberg, Rebecca) (Entered: 02/09/2004) |
| 02/06/2004 | 43 | Judge Douglas P. Woodlock : ORDER entered:JUDGMENT as to Dane Young (1), 1, Sentence Imposed: 30 months imprisonment; judicial recommendation for designation at McRae; 3 years supervised release with standard and special conditions, $100 Special Assessment, No Fine. (Greenberg, Rebecca) (Entered: 02/10/2004) |
| 02/06/2004 | 44 | Judge Douglas P. Woodlock : ORDER entered: STATEMENT OF REASONS as to Dane Young (Greenberg, Rebecca) (Entered: 02/10/2004) |
| 02/06/2004 | 45 | NOTICE of Appeal Rights for Dane Young (Greenberg, Rebecca) (Entered: 02/10/2004) |
| 11/29/2004 | 46 | MOTION to Vacate,set aside or correct sentence by a person in Federal Custody under 28 U.S.C. 2255 as to Dane Young. (Nici, Richard) (Entered: 01/03/2005) |
| 05/10/2005 | 47 | TRANSCRIPT of Plea/Sentencing as to Dane Young held on January 12, 2004 before Judge Woodlock. Court Reporter: Pamela R. Owens. The original transcripts are maintained in the case file in the Clerk's Office. Copies may be obtained by contacting the court reporter at 617/443-0008 or the Clerk's Office. (Scalfani, Deborah) (Entered: 05/10/2005) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/01/2005 09:29:40 | | |
| PACER Login: | ux2295 | Client Code: |
| Description: | Docket Report | Search Criteria: | 1:03-cr-10103-DPW |
| Billable Pages: | 6 | Cost: | 0.48 |

# **EXHIBIT 3**

1                    UNITED STATES DISTRICT COURT

2                     DISTRICT OF MASSACHUSETTS

3        * * * * * * * * * * * * * * * *
                                        *
4        UNITED STATES                  *
                         Plaintiff      *
5                                       *
             VERSUS                     *     CR-03-10103-DPW
6                                       *
         DANE YOUNG                     *
7                        Defendant      *
                                        *
8        * * * * * * * * * * * * * * * *

9            BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

10              UNITED STATES DISTRICT COURT JUDGE

11                   PLEA/SENTENCING HEARING

12                     JANUARY 12, 2004

13       APPEARANCES:

14           DICKENS MATHIEU, ESQ., Assistant United States
             Attorney, United States Attorney's Office,
15           1 Courthouse Way, Suite 9200, Boston,
             Massachusetts  02210, on behalf of the
16           United States

17           TIMOTHY G. WATKINS, ESQ., Federal Defender's
             Office, 408 Atlantic Avenue, Third Floor, Suite
18           328, Boston, Massachusetts  02210, on behalf
             of the Defendant

19

20                              Courtroom No. 1 - 3rd Floor
                                1 Courthouse Way
21                              Boston, Massachusetts 02210
                                11:25 A.M. - 12:00 P.M.

22

23            Pamela R. Owens - Official Court Reporter
               John Joseph Moakley District Courthouse
24               1 Courthouse Way - Suite 3200
                  Boston, Massachusetts  02210

25

1          CR-03-10103-DPW

2          JANUARY 12, 2004

3          THE COURT:  Well, we're here both for change

4     of plea and sentencing.  But so I'm certain that the

5     defendant has full knowledge of the considerations, let

6     me ask Mr. Watkins whether you and your client have

7     reviewed the presentence report.

8          MR. WATKINS:  Yes, we have, Your Honor.

9          THE COURT:  Are there changes or corrections

10    that you want me to make in the report itself?

11         MR. WATKINS:  No, Your Honor.

12         THE COURT:  As a consequence, the Guideline

13    range here is we're dealing with criminal history

14    category I and a total offense level of 21?

15         MR. WATKINS:  Correct.

16         THE COURT:  I gather there's not a dispute

17    about the safety valve?

18         MR. WATKINS:  I'm sorry, Your Honor?

19         THE COURT:  There's not a dispute about the

20    safety valve?

21         MR. WATKINS:  There is a dispute apparently,

22    Your Honor.

23         THE COURT:  Well, then I think that would have

24    to be a change in the presentence report if I were to

25    adjudicate that the safety valve is available to you.

1          MR. WATKINS:  The presentence report includes

2     provisions that alternatively mention what the

3     Sentencing Guidelines would be under the safety valve

4     provision.  And also, I have asked for a further

5     reduction in role by motion.  I think the Government has

6     recently added for a change or advocating for a change

7     in that, also.

8          THE COURT:  Well, then let me understand where

9     the parties are.  But I want Mr. Young to know that I'm

10    not going to resolve those issues until after the plea

11    here, but I want him to understand what the range is.

12         First, there is a dispute with respect to the

13    safety valve.  Second, with respect to role, Mr.

14    Mathieu?

15         MR. MATHIEU:  Yes, Your Honor.  The Government

16    in its sentencing memorandum apologized for not having

17    filed an earlier objection and sought leave to file a

18    late objection.  And we are arguing that the defendant

19    should not be given any reduction for role.

20         THE COURT:  Okay.  So, the effect of that is

21    with respect to the safety valve not being available,

22    the sentence could be as much as 60 months in prison;

23    the Guideline range would be four years; the Guideline

24    fine range of 7500 to two million dollars; there's a

25    special assessment of $150.  If the Government's

1    position were to be upheld, there would be a Guideline

2    range of 46 to --

3              PROBATION OFFICER:  Your Honor, the special

4    assessment would be a hundred dollars.  I thought you

5    said $150.

6              THE COURT:  A hundred.  I'm sorry.  Excuse me.

7              If the Government's position is accepted, the

8    Guideline range for the safety valve would be 46 to 57

9    months; is that right?

10             MR. MATHIEU:  That's correct, Your Honor.

11             PROBATION OFFICER:  The Guidelines -- if the

12   Court doesn't give the safety valve and doesn't give any

13   role adjustments, it would be 46 to 57 months, but you'd

14   still be stuck with the mandatory minimum of 60 months.

15             THE COURT:  Right.  Okay.  So it would be --

16   but if I gave the safety valve, under the Government's

17   theory it would be 46 to 57 months?

18             MR. MATHIEU:  Well, he would get an additional

19   two points for the safety valve.

20             PROBATION OFFICER:  Right.  He'd be back at a

21   21 because he wouldn't give any role --

22             THE COURT:  I see.

23             PROBATION OFFICER:  So it would be as

24   calculated now.

25             THE COURT:  He'd be 37 to 46 months?

1          PROBATION OFFICER:  Yes.

2          THE COURT:  And under the approach that the

3     Probation Office has taken in the presentence report, it

4     would be 30 to 37 months.

5          PROBATION OFFICER:  As calculated now, if he

6     were to be given the safety valve, yes.

7          THE COURT:  All right.  Now, in addition, I

8     have received the sentencing memorandum and motion for

9     downward departure that the defendant submitted.

10         I received the Government's sentencing

11    memorandum and opposition to the motion for a downward

12    departure.

13         I've received the affidavit of Mr. Coleman.

14    Any other materials I should have?

15         MR. WATKINS:  Your Honor, there is one more

16    letter I received from Mr. Young this morning.  This is

17    in response to the Government's filing late Friday

18    concerning some of the -- it would go to the issues

19    concerning the safety valve.

20         THE COURT:  All right.  You have a copy of

21    this?

22         MR. MATHIEU:  I do, Your Honor.

23         THE COURT:  All right.  Well, understanding

24    that, whatever the outcome, Mr. Young is prepared to

25    enter a plea?

```
 1            MR. WATKINS:  He is, Your Honor,
 2            THE COURT:  I'll ask Ms. Greenberg to swear
 3       him and I'll ask him some questions.
 4
 5                      DANE YOUNG, SWORN
 6                  E X A M I N A T I O N
 7       BY THE COURT:
 8       Q    Mr. Young, the purpose of this hearing is to
 9       satisfy me that what appears to be your intention to
10       plead guilty to the charges here is a knowing and
11       voluntary act on your part.  In order for me to make
12       that kind of determination, I have to ask you some
13       questions.  Some of the questions I'll ask you are
14       personal in nature and not to delve into your personal
15       life except as it helps me to know whether or not you
16       know what you're doing.  All right?
17       A    Yes, sir.
18       Q    Can you tell me how old a man you are?
19       A    I'm sorry?
20       Q    How old are you?
21       A    Twenty-seven years old.
22       Q    How far did you get in school?
23       A    I have an AA degree.
24       Q    In what subject matter?
25       A    It was general transfer.  It was gearing towards
```

1    engineering.

2    Q    And what have you been doing for a living for the

3    past three or four years?

4    A    I've been working different jobs from retail to

5    customer service.

6    Q    Have you had any difficulty understanding what this

7    case is about, what it is the Government is --

8    A    No, Your Honor.

9    Q    -- accusing you of?

10   A    No, Your Honor.

11   Q    Have you had an adequate opportunity to discuss

12   this case with Mr. Watkins, your attorney?

13   A    Yes, Your Honor.

14   Q    Do you feel you've received from him the kind of

15   legal advice that you need to make your own decision

16   about whether or not to plead guilty?

17   A    Yes, Your Honor.

18   Q    Is there any plea agreement in this case, Mr.

19   Young; do you know?

20   A    No, Your Honor.

21   Q    Did anybody threaten you to get you to plead

22   guilty?

23   A    No, Your Honor.

24   Q    Did anybody promise you something to get you to

25   plead guilty?

1    A    No, Your Honor.

2    Q    Have you ever had a problem with substance abuse,

3    either drugs or alcohol?

4    A    Excuse me?

5    Q    Have you ever had a problem with substance abuse,

6    either drugs or alcohol?

7    A    No, Your Honor.

8    Q    Have you taken any prescription drugs at this

9    point?

10   A    No, Your Honor.

11   Q    Are you seeing a physician for any kind of physical

12   ailment?

13   A    No, Your Honor.

14   Q    Have you ever had occasion to consult with a mental

15   health professional, like a psychiatrist, a

16   psychologist, a psychiatric social worker, anybody who

17   is concerned with mental health problems?

18   A    No, Your Honor.

19   Q    Now you understand you don't have to plead guilty

20   at all?

21   A    Yes, Your Honor.

22   Q    That is to say that the Government bears the entire

23   burden of proving each essential element of the offense

24   against you beyond a reasonable doubt.  And unless and

25   until they do that, you can't be found guilty unless you

1    plead guilty yourself; do you understand that?

2    A    Yes, Your Honor.

3    Q    And you understand you have a right to challenge

4    the Government's case?  That is, you don't have to just

5    sit back and put the Government to its proof.  Mr.

6    Watkins could cross-examine witnesses on your behalf.

7    He could bring in witnesses on your behalf as well.  And

8    if they wouldn't come in voluntarily, I'd give him

9    legal process that's necessary to compel people to come

10   into court.  In addition, you would have the right to

11   take the stand yourself and tell your side of the story

12   or you could choose not to.  If you chose not to, I

13   would tell the jury -- because you're entitled to a jury

14   to hear this case -- I'd tell the jury that they can't

15   hold that against you, that's one of your valuable

16   constitutional rights that is meant to emphasize that the

17   burden of proof always remains with the Government.

18   The Government can't force you, directly or indirectly,

19   to testify in a case against you.  And the jury is

20   obligated not to hold it against you in any form,

21   directly or indirectly.  By pleading guilty, you're

22   giving up all of those rights; do you understand that?

23   A    Yes, Your Honor.

24   Q    Now, in this case, we have talked about what the

25   potential Guideline sentences are.  And we'll get to

1    that in a minute.   But I want to be clear that you

2    understand what the maximum sentence is in this case.

3    And the maximum is 40 years' imprisonment.   The sentence

4    can be -- the fine can be as much as two million

5    dollars.   There is a special assessment that

6    communicated was a hundred dollars in this case.   And

7    the period of supervised release can be as much as five

8    years.   Do you understand?

9             PROBATION OFFICER:   Your Honor, actually by

10    the statute, the management for supervised release is a

11    life term by statute.   The penalties under 21 USC 841

12    says they offer something higher than the default max.

13    which would be life.

14             BY THE COURT:

15    Q    Okay.   So you understand that it could be as much

16    as that in this case?

17    A    Yes, Your Honor.

18    Q    Now, those are the statutory maximums.   But we talk

19    about the Guideline provisions.   You understand that the

20    Guidelines are a series of directives.   You see them in

21    the presentence report --

22    A    Yes, Your Honor.

23    Q    -- that outline the various considerations that I

24    should have in mind at the time of sentencing.

25    A    Yes, Your Honor.

1    Q    And I'll make my own determination about what the

2    Guidelines mean under these circumstances.  But I'm

3    going to be looking to the guidelines to make my

4    determination in this case; do you understand that?

5    A    Yes, Your Honor.

6    Q    And you understand that if you don't like what I

7    do, you don't get to withdraw your plea; do you

8    understand that?

9    A    Yes, Your Honor.

10    Q    Do you understand that I can be making a

11    determination that might make this case outside of the

12    Guidelines and up to the statutory maximum?  Do you

13    understand that?

14    A    Yes, Your Honor.

15    Q    Now, in addition to the problem of what the

16    sentence might be here, pleading guilty may affect other

17    aspects of your life.  It may mean that you're going to

18    be deported.  It may mean that you won't be able to

19    serve in a public office.  It may mean that you can't

20    hold a firearm.  It may mean that you can't serve on a

21    jury yourself.  All of those things may be implicated by

22    your decision to plead guilty; you understand that?

23    A    Yes, Your Honor.

24    Q    Okay.  Now, in addition, one of the things that I

25    have to satisfy myself about is whether or not there is

1    sufficient evidence from which a finder of fact could

2    find you guilty of the offense charged.  And the offense

3    conduct is laid out in the presentence report here.

4    But the offense charged, as you know, concerns the

5    importation of cocaine from Jamaica?

6    A    Yes, Your Honor.

7    Q    And you understand that in connection with that,

8    the Government has to show that you did that knowingly

9    and voluntarily?  That is, you knew you were importing

10   some controlled substance.  It wasn't some mistake on

11   your part and that you agreed to do so?

12   A    Yes, Your Honor.

13   Q    Now, have you discussed the elements of the offense

14   with Mr. Watkins?

15   A    Yes, Your Honor.

16   Q    And are you satisfied you've received the

17   information that you need about the strategies and

18   defenses that you would have to these charges?

19   A    Yes, Your Honor.

20   Q    Now, turning to the offense conduct, do you dispute

21   any of the offense conduct that's set forth in the

22   presentence report?

23   A    No, Your Honor.

24   Q    Is that what happened?

25   A    Yes, Your Honor.

1    THE COURT:  Mr. Mathieu, do you know of any

2    reason I shouldn't accept a plea?

3    MR. MATHIEU:  No, I don't, Your Honor.  But

4    the Government would just ask that the defendant be

5    advised of one more consequence of his guilty plea,

6    which is the possibility of a five-year minimum

7    mandatory sentence.

8    THE COURT:  Okay.

9    BY THE COURT:

10   Q    I think we should emphasize that again.  That is,

11   if I don't accept the argument concerning the safety

12   valve, then you're going to face a minimum mandatory of

13   five years; do you understand that?

14   A    Yes, Your Honor.

15   Q    All right.

16   THE COURT:  Mr. Watkins, do you know of any

17   reason I shouldn't accept a plea?

18   MR. WATKINS:  No, I don't, Your Honor.

19   THE COURT:  All right.  I'll ask Ms. Greenberg

20   to inquire of Mr. Young.

21   THE CLERK:  Defendant please stand.

22   Dane Young, on Criminal No. 03-10103-DPW, you

23   are charged in Count 1 of a one-count indictment with

24   importation of cocaine in violation of Title 21, United

25   States Code, Section 952(a)(1) and 960(a).  You have

1    previously pled not guilty.  Do you now wish to change

2    your plea?

3             MR. YOUNG:  Yes, I do.

4             THE CLERK:  What say you now as to Count 1,

5    guilty or not guilty?

6             MR. YOUNG:  Guilty.

7             THE CLERK:  Please be seated.

8             THE COURT:  Let me see if I can focus this a

9    bit.

10            With respect to role in the offense, I have

11   considered the arguments of the defendant.  I'm not

12   going to change the probation view.  I do view the late

13   submission with respect to role in the offense by the

14   Government to in and of itself deprive the Government

15   of that argument.  The Government has an obligation

16   to speak in a timely fashion with respect to its

17   objections.  It did not do so here.  Moreover, looking

18   at it, it seems to me to be not well-founded.

19            Turning to the other requested changes, with

20   respect to aberrant behavior, I can't find that this is

21   aberrant behavior under these circumstances.  This was

22   not a crime undertaken in a short period of time without

23   some very significant planning.  It is clear that the

24   defendant, even by his own admission, was involved over

25   a period of a couple of months of working his way

1   through the opportunities that were provided by drug

2   smuggling.  While this may represent a marked deviation

3   from an otherwise law-abiding life, that involved

4   significant planning and was not of limited duration.

5   And as a consequence, I decline to depart on the basis

6   of aberrant behavior.

7          Similarly, with reference to the claim of the

8   family circumstances and ties, I do not find that to be

9   sufficient in this set of circumstances.  The rule in

10  the First Circuit is quite austere with respect to

11  extraordinary family circumstances.  But this doesn't

12  even approximate that circumstance.  There is no

13  question that the defendant has children, a child of a

14  particularly vulnerable age.  That's not unusual in

15  this setting.  It doesn't take the months out of the

16  Guidelines for that.

17         Turning to the defendant's status as an alien,

18  that's not going to influence taking him outside of the

19  Guidelines.  Even assuming that the Guidelines can be

20  modified for status such as alien status, it's clear

21  that the Sentencing Commission was aware of this

22  circumstance -- that is, alienage -- and that it chose

23  not to make any kind of special treatment of aliens

24  knowing that there was a disparate treatment of aliens

25  in the Bureau of Prisons for good and sufficient

1    reasons.  So I'm not going to depart on those grounds

2    either and together those grounds and no great

3    attraction than they have admittedly.  So, for those

4    reasons, I will not depart.

5          Now, turning to the question of the safety

6    valve, which I think is the only issue remaining here,

7    isn't it clear, Mr. Watkins, that at the time of the

8    proffer, Mr. Young was less than candid?

9          MR. WATKINS:  Your Honor, I'd suggest that

10   it's not as clear as all of that.  The difficulty, Your

11   Honor, here is that the Court has the affidavit of Mr.

12   Coleman, which I was only able to see over the weekend.

13   It was the first time that I saw it.  I had not seen any

14   kind of memorializations of the actual proffer session.

15   I was present.  In fact, Mr. Mathieu and I were both

16   present at the proffer session which took place actually

17   down in Florida at or near Mr. Young's home.  I think

18   really some background -- if I may, Your Honor, just

19   because I did not have the opportunity to put this down

20   into writing -- Mr. Young was arrested at the airport,

21   went through a very detailed and very long session over

22   really quite some hours that's detailed in a different

23   report that Mr. Coleman made.  In that report, he

24   detailed really the entire scope of the operation.  He

25   provided names of individuals that were involved, both

1    in Jamaica and here in Florida.  And these were not

2    just vague descriptions.  These were quite detailed

3    descriptions to the point where the Government was able

4    to identify an apartment and the identity of the person

5    in Springfield that gave Mr. Young money to go to

6    Jamaica and who was supposed to return.

7          THE COURT:  But focus on one specific issue.

8    I understand the background.  Let's focus on one

9    specific issue.  I have in mind paragraph (11) of Mr.

10   Coleman's affidavit.

11         MR. WATKINS:  If I may, Your Honor --

12         THE COURT:  Yes.

13         MR. WATKINS:  Yes, Your Honor.

14         THE COURT:  It is the case that Mr. Coleman,

15   Mr. Mathieu indicated that they didn't believe Mr.

16   Young, that at a certain point in the proffer session

17   after essentially the substance of the proffer had been

18   provided?

19         MR. WATKINS:  I do not recall it that way.  I

20   do recall Mr. Young giving a proffer.  I should say this

21   was in the context of a potential attempt to cooperate,

22   a 5K kind of proffer letter rather than specifically

23   safety valve here.  So what the agents were interested

24   in at that point was a very detailed kind of analysis of

25   the case from Mr. Young that they could use to try to --

1    THE COURT:  I'm not sure.  Maybe you'll

2  convince me otherwise.  But I'm not sure that's a

3  distinction that makes a difference.

4    MR. WATKINS:  Well, here --

5    THE COURT:  What is reported by Mr. Coleman is

6  after consultation with you, Mr. Young amended his story

7  by stating that Simeone, who he had been assisting, did

8  not go on the second trip to Jamaica and the purpose

9  thereof.  He had, in fact, recruited him to smuggle

10  drugs in January of 2003 and that he had offered to pay

11  him $2,000 and $4,000 to pay him for drugs that he

12  brought back.

13    MR. WATKINS:  That's correct, Your Honor.

14  And that is what happened is that after some time to

15  speak with me and I talked with Mr. Young in very kind

16  of frank and open terms and, in fact, the proffer

17  session continued for some hour and a half or two

18  hours after that where Mr. Young was, in fact, giving

19  information here.

20    THE COURT:  Well, but what do you -- when does

21  one decide that the safety valve has been met, when the

22  individual is embraced because he hasn't been telling

23  the truth and then tell us some more?  Or is it at some

24  point when he comes in and gives his side of the story

25  and is provided an opportunity to -- and then is

1    confronted with inconsistency and the Government makes

2    clear at that point that they don't believe him?  So now

3    he comes forward with more.  And is it whenever it ends

4    up at the end of however much proffering we have to do?

5          MR. WATKINS:  I believe for purposes of the

6    safety valve, that is correct, that it reads very

7    clearly up until the time of sentencing.  And the case

8    law is clear that this can include a change in stories,

9    that a person can deny it first and come back in later,

10   as often happens, to talk to the Government exactly

11   about what happened.  And I would suggest that what

12   happened here --

13         THE COURT:  All right.  So your position is

14   that his statement, as reflected at the conclusion of

15   the proffer session, is full and accurate with respect

16   to his involvement in this transaction?

17         MR. WATKINS:  As for purposes of the safety

18   valve, Your Honor.

19         THE COURT:  Okay.  Just a moment.  I just want

20   to clarify the issues.  So, what, Mr. Mathieu, do you

21   say at this stage or at this point in time is

22   inaccurate?

23         MR. MATHIEU:  The Government's position is

24   that the defendant still hasn't told the complete truth,

25   Your Honor.

1            THE COURT:  In what particular?

2            MR. MATHIEU:  Specifically with respect to his

3    trip in January.  And I'll focus on that first in

4    response to the Court's specific question, but I have

5    further argument that I'd like to make on the point.

6            In the defendant's last statement -- and by

7    background, I've also given the defendant an opportunity

8    to come back in.  And --

9            THE COURT:  No.  We are where we are.

10           MR. MATHIEU:  Okay.

11           THE COURT:  This is the point at which we

12   evaluate whether or not Mr. Young has been complete and

13   candid.

14           MR. MATHIEU:  No, I appreciate that, Your

15   Honor.  But I also want the Court to know that having

16   told Mr. Watkins that the Government didn't believe that

17   his client had been completely truthful, we did provide

18   him with another opportunity to come in afterwards and

19   he declined that opportunity or that offer.

20           But when you focus on the circumstances

21   surrounding the January transaction, I think the

22   circumstances provide a clear inference that the

23   defendant was not completely truthful.

24           If you read the PSR, you'll see that the

25   defendant's financial situation was dire.  He had

1    problems maintaining employment.  He had no income
2    coming in, although at one point during the proffer,
3    the defendant claimed that he loaned this Simeone
4    $1300 which he never was paid back.  And this
5    supposedly happened in December of 2002.  It paints
6    a picture of an individual who had no money.  The
7    Government submitted documents, which are attached to
8    Special Agent Coleman's affidavit which illustrate the
9    fact that the defendant had no money.  He couldn't pay
10   his rent.  He was two months back, late in his rent.
11   He was incurring late fees and it appears that they
12   were moving to evict him as there were attorney's
13   fees that were to be recouped.  Then all of a sudden,
14   approximately a week or so after the defendant returns
15   from Jamaica, a trip during which he initially said that
16   he went for the purposes of a funeral, but then he
17   changed his story and said that he actually went and he
18   met somebody there accidentally and this person (Indian)
19   offered him an opportunity to make money by bringing
20   something back into the United States, then he said that
21   he didn't bring anything back.  Later on, he changes his
22   story to say, well, in fact, he did go to Jamaica for
23   the purposes of a funeral, he went because he had been
24   recruited to smuggle drugs.  But then he still insisted
25   that he didn't bring any drugs back on that occasion.

1    But the facts suggest otherwise because approximately a

2    week after he returned from Jamaica, all of a sudden

3    he's cash flush and he is able to pay his rent.  Now,

4    the defendant has submitted a letter that purports to

5    explain a legitimate source for that money, but the

6    Government would make two comments about that.  First

7    of all, this is not an affidavit.  It's not sworn.

8    Secondly, it seems that this would be a letter that

9    should have been filed by Renee Reynolds and not the

10   defendant in that it really purports to explain why

11   Renee Reynolds was unable to pay the rent and how she

12   was subsequently able to come up with the money.

13        But, moreover, Your Honor, I think the telling

14   fact that suggests that the defendant had actually come

15   back from Jamaica with drugs and was paid for returning

16   with those drugs is the way the rent was paid.  Look at

17   the structuring that was involved.  There were five

18   different checks -- six different checks, five of them

19   in the amount of $500, one in the amount of $200.  If

20   the defendant is paying his rent, why would he not just

21   buy one money order in the tune of $2700?  Why structure

22   it so that there are all these smaller amounts?  And I

23   think that fact more than any other, Your Honor, points

24   to the inference and confirms the Government's belief

25   that defendant lied about coming back from Jamaica

1    without drugs in January of 2003.

2            THE COURT:  All right.  Mr. Watkins, you want

3    to speak on that?

4            MR. WATKINS:  Just a couple of things.

5            First, Your Honor, as to the Renee or the

6    letter that I submitted to the Court, it is true it's

7    not in affidavit form.  It is also true that I was

8    unaware of the scope of what this hearing was going to

9    be, what the Government was actually alleging about what

10    it believed, it showed that Mr. Young was not telling

11    the truth.  Until I got the affidavit over the weekend

12    from Mr. Coleman, if I had known, I would have perhaps

13    even arranged for Ms. Reynolds to come up.  I can report

14    to the Court that I have spoken with Ms. Reynolds about

15    the issue and she would confirm what isn't there.  I'd

16    be happy to have her perhaps deposed down there, perhaps

17    brought up, perhaps talked to by the Probation

18    Department.  But in fact, she confirms everything that

19    is in that letter.  So, to the extent that that is some

20    impediment to whether this is legitimate or anything,

21    we'd --

22            THE COURT:  Well, let me ask:  Is it a

23    disputed issue of fact, Mr. Mathieu?  I mean, what I

24    understand you to be saying was that I'm supposed to

25    draw an inference from the seemingly or at least the

1    conventional and unconventional method of payment here

2    and the sources of funds?  They offer -- Mr. Young

3    offers an explanation for it.  If I accept his

4    explanation, then that aspect of your argument

5    disappears, doesn't it?

6            MR. MATHIEU:  I don't think the Court should

7    accept this explanation.

8            THE COURT:  Well, the question of whether I

9    accept an explanation is really one of process, what

10   kind of process do I pursue.  Now I've got two pieces of

11   paper.  I don't have a live witness or other witnesses

12   on it.

13           MR. MATHIEU:  Well, I mean, if you accept this

14   piece of paper, Your Honor, then I think that there is a

15   legitimate explanation thereby.

16           THE COURT:  Okay.  So, let's assume that there

17   is a legitimate explanation, that he's made aware of

18   having to decide whether or not under these facts and

19   circumstances you would assume that Mr. Young went to

20   Jamaica and did some drug transactions.

21           MR. MATHIEU:  I'm not sure I understand your

22   question, Your Honor.

23           THE COURT:  Well, let's assume that there is a

24   full explanation for the drug payment.  Okay.  That

25   aspect of the evidence and the inferences to be drawn

1  are no longer available to you.  What else do I have to

2  let me believe that Mr. Young was not telling the truth

3  about this?

4          MR. MATHIEU:  Well, now I will refer back to

5  the argument that I alluded to earlier.  When you look

6  at the totality of the circumstances in terms of the

7  statements that the defendant has made to the

8  Government, from the moment he encountered the

9  Government at Logan Airport to the moment that we

10  concluded the safety valve proffer in June of this past

11  year, it is clear, Your Honor, that the defendant has

12  not been completely honest.  And I guess ultimately the

13  question is at the end was he honest?  And I don't think

14  he has been, Your Honor.  I have Special Agent Coleman

15  here.  If you need to hear from him, we can put him on

16  the stand.  You have his affidavit.  His conviction,

17  after over a decade of law enforcement --

18          THE COURT:  He's not going to -- with all

19  respect to Mr. Coleman, I'm not going to accept it on

20  the basis of the law enforcement officer basis.  It's

21  not coming in.

22          MR. MATHIEU:  Well, Your Honor, there were

23  certainly indicia of --

24          THE COURT:  I assume that it's all set forth

25  in the affidavit.

26

MR. MATHIEU:  There were certain things such
as Agent Coleman being able to look at the defendant and
determine whether defendant is making eye contact.

THE COURT:  If this is -- and this is a
serious amount of time now, a serious amount of time
difference.  If I'm going to be deciding something in
the area of two years, I'm going to do it live.

MR. MATHIEU:  Well, the Government would call
Special Agent Coleman.

THE COURT:  I'm not sure that that's where I
want to start with this.  I'll accept his affidavit for
now as providing a basis for it.  But it seems to me
that this is something that has to be resolved by a
hearing.  Mr. Young is going to go into custody now.
That much is clear.  The issue is for how long a period
of time that's going to be.  And I'll permit the parties
to have a certain amount of time to provide the best
case live.  That may mean cross-examination of Mr.
Young.  It may mean that some examination of Ms.
Reynolds is undertaken.

MR. MATHIEU:  The Government would agree with
that approach, Your Honor.

THE COURT:  Mr. Watkins?

MR. WATKINS:  Your Honor, that sounds fine to
me.  Just one issue I should address because Mr. Mathieu

1    talked about being -- I think he said -- determinative

2    about the structuring.  I should put on the record that

3    it's my experience that $500 is the maximum allowed to

4    be purchased on a money order, particularly in the way

5    that Ms. Reynolds and Mr. Young did.  So, that would be

6    the reason.

7           THE COURT:  I simply don't know.  And

8    presumably there will be some way of evaluating.  I'm

9    told that Ms. Young had two full pay checks.  Why she

10   broke it down to money orders was something not

11   immediately apparent to me.  But in any event, I'll

12   permit you time that's necessary.  So, Mr. Mathieu, what

13   do you need?  Do you want to go talk to or have someone

14   go talk to Ms. Reynolds; is that it?

15          MR. MATHIEU:  We would like to have somebody

16   actually go to the management company and look for those

17   items.  That's one thing we'd like to do.  And that's

18   going to take a little bit of time.  And we would like

19   to have somebody interview Ms. Reynolds on this point.

20          THE COURT:  Okay.  And then the parties will

21   -- I think what I would like to do is set a specific

22   schedule, specific date for further hearing on this.

23   And the parties can decide what evidence they want to

24   present to me.  You have got an idea of what is on my

25   mind here.  I would think that two weeks would be

28

1    sufficient.

2              MR. WATKINS:  That's fine, Your Honor.

3              MR. MATHIEU:  Just so the Court would know, I

4    have a trial in front of Judge O'Toole starting January

5    26th.

6              THE COURT:  How long is that going to be?

7              MR. MATHIEU:  That's going to go about a week,

8    Your Honor.  So, I think the first week --

9              THE COURT:  Well, a lot of this is going to be

10   done by agents, not necessarily by you.

11             MR. MATHIEU:  Sure.  I think the first week in

12   February looks good.

13             THE COURT:  Okay.  Friday, February 6th at

14   2:30.

15             MR. MATHIEU:  That's fine, Your Honor.

16             MR. WATKINS:  Yes, Your Honor.  Thank you.

17             THE COURT:  All right.  Well, Mr. Young,

18   having pled guilty to the offense charged, I'm going

19   revoke his bail and remit him to the custody of the

20   Attorney General here.  Do you want him to just simply

21   report downstairs?

22             MARSHAL:  We can take him down in the front,

23   Your Honor.

24             THE COURT:  Okay.  And then we'll take up the

25   question of the safety valve with such information as

1    the parties want to provide me with.  But the focus, as

2    I understand it, is on whether or not he was truthful

3    and candid with respect to the January trip.

4            MR. MATHIEU:  I think that's the specific

5    issue with that.

6            THE COURT:  Okay.  So that you can both

7    prepare -- well, are there any other issues that you

8    want to raise?

9            MR. MATHIEU:  Well, that's it, Your Honor.

10            THE COURT:  Okay.  All right.

11            MR. MATHIEU:  Thank you.

12            THE COURT:  I'll see you on the 6th.

13            MR. WATKINS:  Thank you, Your Honor.

14                    RECESSED AT 12:00 P.M.

15

16                C E R T I F I C A T E

17            I, PAMELA R. OWENS, Official Court Reporter,

18    U. S. District Court, do hereby certify that the

19    foregoing is a true and correct transcription of the

20    proceedings taken down by me in machine shorthand and

21    transcribed by same.

22

23            _Pamela R. Owens 5/10/05_

24

25

# EXHIBIT 4

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

```
---------------------------------
UNITED STATES OF AMERICA     :        Cr. No. 03-10103-PBS
                             :
                             :
            V.               :        Courtroom No. 1
                             :        1 Courthouse Way
                             :        Boston, MA 02210-3002
       DANE YOUNG            :        2:00 p.m., Friday,
---------------------------------     February 6, 2004
```

Sentencing Hearing

Before:        THE HONORABLE DOUGLAS P. WOODLOCK
               UNITED STATES DISTRICT JUDGE

APPEARANCES:

Dickens Mathieu, Assistant United States Attorney,
  1 Courthouse Way, Suite 9200, Boston, MA 02210-3002,
  on behalf of the Government.

Federal Defender's Office, (by Timothy G. Watkins, Esquire),
  408 Atlantic Avenue - Suite 328,
  Boston, MA 02210,
  on behalf of the Defendant.

Marie L. Cloonan
Federal Court Reporter
1 Courthouse Way - Room 7200
Boston, MA 02210 - 617-439-7086
Mechanical Steno - Transcript by Computer

2

```
 1                              *  *  *

 2              THE CLERK:  United States v. Dan Young, Civil

 3     Action No. 03-10103, will now be heard before this Court.

 4              THE COURT:  Well, as I understand what is remaining

 5     is the question of the safety valve here.

 6              Mr. Mathieu, do you have witnesses?

 7              MR. MATHIEU:  No.  You will notice that the

 8     government has no witnesses.  And, the reason is that I

 9     informed Mr. Watkins of this -- I believe it was yesterday

10     -- that there was some subsequent investigation done by

11     Chris Campanelli of the Customs Service down in the Florida

12     area.  And, based on his investigation, the government is

13     withdrawing its objection on that one specific point that we

14     were focused on at the last hearing.  And, therefore, we are

15     not opposing the safety valve.

16              THE COURT:  All right.

17              Okay.  So, do you want to be heard on the sentence?

18              MR. MATHIEU:  Your Honor, the government would

19     recommend the low end of the Guideline range.

20              THE COURT:  All right.

21              Mr. Watkins?

22              MR. WATKINS:  Your Honor, I join in the

23     government's recommendation for the low end of the sentence.

24              Your Honor, I set forth some of the personal

25     factual circumstances.  This is a very -- I think a very
```

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

3

1   tragic case.  Although, Mr. Young is not outside of the
2   heartland of offenders for this, he is out of the heartland
3   of clients I have represented.

4       He has a lot of potential.  He's obviously a very
5   intelligent young man.  He had a lot of things going for
6   him.  Unfortunately, he's looking at a very, very difficult
7   few years and lifetime ahead because of this really, really
8   stupid thing that he did here.

9       He has two U.S. citizen children here in the United
10  States and a fiancee, as well as his mother, all of whom
11  were here.  And, he's going to have to live the rest of his
12  life in Jamaica.  It's a tragic consequence of what happened
13  here.

14      I would ask the Court to consider the low end of
15  the Guildeline range.

16      THE COURT:  So we're clear on this, the low end of
17  the guidelines is 30 months -- it's 30 to 37 months.

18      MR. WATKINS:  Thirty months.  That's correct, your
19  Honor.  I would ask for a sentence of 30 months, three
20  years' supervised release, which I believe the Court can
21  impose because of this --

22      THE COURT:  Because of the safety valve, I can --

23      MR. WATKINS:  That's correct.

24      THE COURT:  -- go below four --

25      PROBATION OFFICER:  That's correct, your Honor.

4

1          THE COURT:  -- four years.

2          MR. WATKINS:  As a practical matter, of course, Mr.

3    Young fully expects that he will be deported at the end of

4    this sentence.  I would ask the Court not to impose any fine

5    given the personal circumstances, and Mr. Young clearly does

6    not have financial circumstances such that he could

7    reasonably pay any kind of fine.

8          I'd also ask the Court to consider a recommendation

9    to a specific institution and that is McRae Correctional

10   Facility, which is spelled M-c-R-a-e, which is in Georgia --

11   which is in the south central region -- I'm sorry, not south

12   central.  The southeastern region of the Bureau of Prisons,

13   where Mr. Young would go anyway because of his ties to the

14   Florida area.

15         The reason I'm asking for that particular facility

16   is, given information I've got from the Bureau of Prisons,

17   also from Mr. Young, that is a specific institution at which

18   he would get deported directly to Jamaica.  Mr. Young is

19   interested in trying to expedite that process because he

20   recognizes that he will be deported and wants to streamline

21   the matter as best he can.  So, I'm going to ask for that

22   particular recommendation.

23         The Bureau of Prisons legal office tell me that the

24   Court can make that recommendation there.  Of course, if

25   they cannot honor it, they will not.  But, certainly, the

5

1    Court can make that recommendation.

2            THE COURT:  Well, let me -- I'm not familiar with

3    McRae.  MCI McRae?

4            MR. WATKINS:  Your Honor, it is not an MCI, it's a

5    privately contracted -- it's a privately owned facility down

6    there with which the Bureau of Prisons does business.  They

7    do -- I know that I have at least one client there right now

8    that's in Bureau of Prisons custody.

9            The legal office tells me even though it's a

10   private facility, that the Court can still designate there

11   and they will still consider --

12           THE COURT:  And, it's M-c-R-a-e?

13           MR. WATKINS:  That's correct.

14           THE COURT:  And, the two reasons for doing it are

15   proximity to his family?

16           MR. WATKINS:  That's correct.  Within proximity to

17   his family and also --

18           THE COURT:  And, also -- why is there ease of

19   facilitating deportation?  Because it's a facility used for

20   detention?

21           MR. WATKINS:  And, particularly for individuals who

22   are going to be deported back to Jamaica, as I understand

23   it.  I don't know why that is.  Perhaps it's just its

24   proximity to Atlanta, where there are flights to Jamaica.  I

25   don't know why it is.  I do -- I have been told that that is

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

6

1    the case, that there are a number of individuals who expect
2    deportation back to Jamaica at that facility.
3            THE COURT:  All right.
4            Mr. Young, I'll hear from you if there's something
5    that you'd like to say at this point.
6            THE DEFENDANT:  All I can say is I made a stupid
7    mistake.  I never did anything like this in my life.  I
8    never will again.
9            If I ever have the opportunity to talk somebody out
10   of doing something as stupid as this, I'll do whatever I can
11   to discourage them from doing it.
12           I'm just here to accept responsibility for what I
13   did.
14           THE COURT:  All right.  Thank you.
15           Well, I will impose the bottom end of the guideline
16   range, 30 months in prison.  I will not impose a fine
17   because of the defendant's actual financial circumstances
18   and that of those for whom he's responsible.
19           I must impose a special assessment of a hundred
20   dollars, and I'll do that, making that due and payable
21   forthwith.
22           I will impose a three-year term of supervised
23   release.  But, as we've all recognized, the defendant is
24   subject to deportation.
25           Nevertheless, to the degree that that period of

7

1    supervised release is going to be served here in the United

2    States, I impose the customary conditions and, of course,

3    within 72 hours after the defendant is released from the

4    Bureau of Prisons, if he's not turned over to Homeland

5    Security, the defendant must report in person to the

6    Probation Office in the district to which he is released.

7    He is obligated, to the degree that he has left

8    unpaid his hundred dollar special assessment, to report to

9    the United States Attorney's Office for this district within

10   30 days of any change of his mailing or residence address.

11   On supervised release, he's obligated not to commit

12   any other federal, state or local crime and refrain from the

13   unlawful use of controlled substances and to submit to the

14   customary one drug test within 15 days of release from

15   imprisonment and at least two periodic drug tests thereafter

16   as directed by the Probation Office.

17   He's prohibited from possessing a firearm and other

18   dangerous weapon and if he, as we anticipate, is ordered

19   deported, he must leave the United States and is not to

20   return without the prior permission of the Secretary of

21   Homeland Security.

22   I agree, Mr. Young, it was a stupid mistake.  And,

23   you recognize it.  I recognize it.  And, you understand the

24   seriousness of the offense.  It's reflected in the kind of

25   sentences that you faced, even without the safety valve

8

1    here.  And, I'm sure that you'll communicate to those with

2    whom you come into contact the seriousness with which this

3    is received.

4            I hope that you take advantage of such programs as

5    are available in the Bureau of Prisons.  There are programs

6    available in the Bureau of Prisons, and they may be helpful

7    to you in reestablishing yourself in Jamaica.

8            I will accept that obligation -- not obligation --

9    the recommendation that Mr. Watkins has suggested I make to

10   the McRae Correctional Facility in Georgia, both to

11   facilitate some proximity to your family, but also to

12   facilitate deportation if, as you tell me, that's the case.

13           You understand you have a right of appeal.  And you

14   ought to discuss with Mr. Watkins whether or not to exercise

15   that right.

16           Anything further that we need to take up?

17           MR. MATHIEU:  Nothing for the government, your

18   Honor.

19           THE COURT:  Okay.

20           Thank you very much.

21           (Whereupon the hearing was concluded.)

22

23

24

25

## CERTIFICATE

I, Marie L. Cloonan, Official Reporter of the United States District Court, do hereby certify that the foregoing transcript, from Page 1 to Page 8, constitutes to the best of my skill and ability a true and accurate excerpt of transcription of my stenotype notes taken in the matter of Criminal No. 03-10103, United States of America vs. Dane Young.

*Marie L. Cloonan*